Wilbur SEITZINGER, Esquire and Seitzinger & Randazzo, Petitioners

v.

COMMONWEALTH of Pennsylvania c/o Attorney General of Pennsylvania and Pennsylvania Department of Labor & Industry and Sandi Vito, Secretary Pennsylvania Department of Labor & Industry and John T. Kupchinski, Director Pennsylvania Bureau of Workers' Compensation, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2011.

Decided July 28, 2011.

─────────

─────────

Samuel C. Stretton, West Chester, for petitioners.

Kenneth L. Joel, Senior Deputy Attorney General, Harrisburg, for respondents.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

In this original jurisdiction action, petitioners Wilbur Seitzinger, Esquire, and his law firm, Seitzinger and Randazzo (hereafter Law Firm), filed a petition for review (PFR) through which Law Firm seeks declaratory and injunctive relief against the Commonwealth, Department of Labor and Industry and two Department officials (hereafter collectively referred to as the Department). Law Firm rests its request for relief upon the claim that fee-limitation provisions in the Pennsylvania Workers' Compensation Act[1] (the Act) are unconstitutional under Article V, Section 10(c) of the Pennsylvania Constitution,[2] the separation of powers doctrine, and the due process clause of the Fourteenth Amendment of the United States Constitution. (PFR, ¶¶ 17, 20.)

Law Firm challenges two provisions of the Act. The first, Section 442 of the Act,[3] places a ceiling on the percentage of contingency fees attorneys may claim when successfully representing a claimant. The other section, Section 449 of the Act,[4] provides workers' compensation judges with the authority to approve (and void) compromise and release settlement agreements between an employer (or insurer) and a claimant-employee. Significant to Law Firm's claim regarding Section 442 of the Act is the fact that the General Assembly amended that provision in 2006.[5]

Law Firm's request for declaratory relief challenges (1) Sections 442 and 449 of the Act as violating the Supreme Court's constitutional authority to regulate the legal profession under Article V, Section 10 of the Pennsylvania Constitution and the separation of powers doctrine, and (2) Section 449 of the Act as violating the Fourteenth Amendment of the United States Constitution on vagueness grounds. Law Firm seeks permanent and preliminary injunctive relief on the same grounds.

The Department filed preliminary objections to Law Firm's PFR, raising the following grounds for dismissal of the PFR: (1) Law Firm's pleadings are insufficient under Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure based upon earlier decisions of this Court holding that (a) Section 442 of the Act does not violate the separation of powers doctrine or Article V of the Pennsylvania Constitution, and (b) Section 449 of the Act does not relate to attorneys fees, and, therefore, could not violate the separations doctrine; (2) Section 449 of the Act is not unconstitutionally vague; (3) Law Firm's pleadings are insufficient to prove capacity to sue the Department because Law Firm has not pleaded that its attorneys entered into any fee agreements affected by Section 442, and Section 449 of the Act is designed to pro-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

2. Article V, Section 10(c) provides that "[t]he Supreme Court shall have the power to prescribe general rules governing the practice, procedure and the conduct of all courts ... and for admission to the bar and to practice law.... All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions."

3. 77 P.S. § 998.

4. 77 P.S. § 1000.5.

5. Act of November 9, 2006, P.L. 1362, *effective* sixty days from the date of enactment, January 8, 2007.

tect a claimant (not the claimant's attorney) and ensure that a claimant understands the significance of a compromise and release agreement; and (4) Law Firm has an adequate statutory remedy of an appeal to the Workers' Compensation Appeal Board (Board), and ultimately the right to appeal to this Court from a Board decision.

In considering the Department's preliminary objections, we begin with a review of the relevant statutory provisions. Before the General Assembly amended the Act in 2006, Section 442 of the Act provided as follows:

> All counsel fees, agreed upon by claimant and his attorneys, for services performed in matters before any referee or the board, whether or not allowed as part of a judgment, shall be approved by the referee or board as the case may be, providing the counsel fees do not exceed twenty per centum of the amount awarded. *The official conducting any hearing, upon cause shown, may allow a reasonable attorney fee exceeding twenty per centum of the amount awarded at the discretion of the hearing official.*
>
> In cases where the efforts of claimant's counsel produce a result favorable to the claimant but where no immediate award of compensation is made such as in cases of termination or suspension the hearing official shall allow or award reasonable counsel fees as agreed upon by claimant and his attorneys, without regard to any per centum.

(Emphasis added.)

Section 449 of the Act at all pertinent times has provided, in part, as follows:

> (a) Nothing in this act shall impair the right of the parties interested to compromise and release, subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death.

> (b) Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the workers' compensation judge for approval. The workers' compensation judge shall consider the petition and the proposed agreement in open hearing and shall render a decision. The workers' compensation judge shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement. The agreement must be explicit with regard to payment, if any, of reasonable, necessary and related medical expenses.

Section 449 contains no measure relating to attorneys fees.

 The General Assembly's amendment to Section 442 of the Act deleted the emphasized language quoted above that had permitted a hearing official to grant attorneys fees in excess of twenty percent of an award. Additionally, the General Assembly added the following sentence to the end of the second paragraph of Section 442 of the Act: "In the case of compromise and release settlement agreements, no counsel fees shall exceed 20% of the workmen's compensation settlement award." Previously, the Act was silent as to the amount of attorneys fees for compromise and release agreements. Thus, the amendment altered a hearing official's previous discretionary power to award fees greater than twenty per cent for (1) cause shown in cases involving an award, and (2) when a claimant and attorney agree to greater fees in compromise and release situations. The General Assembly did not, however, alter the previous power of hearing officials to make an award of reasonable attorneys' fees in cases in which no immediate award is involved, such as a

successful effort to oppose an employer's termination petition.

The Court has addressed caps on contingency fee percentages under the former language of Section 442 of the Act. In *Samuel v. Workers' Compensation Appeal Board (Container Corporation of America)*, 814 A.2d 274 (Pa.Cmwlth.2002), *appeal denied*, 573 Pa. 713, 827 A.2d 1203 (2003), this Court concluded that neither Section 442 nor Section 449 of the Act violated Article V, Section 10 of the Pennsylvania Constitution:

> In *Weidner v. Workmen's Compensation Appeal Board*, 497 Pa. 516, 442 A.2d 242 (1982), the Supreme Court acknowledged that Section 442 evidences a legislative intent to protect claimants against unreasonable fees imposed upon them by their attorneys pursuant to improvident fee agreements. Nothing in the language of Section 442 would preclude the WCJ from permitting a higher fee agreement if the attorney showed that such a fee was commensurate with the attorney's efforts. Nor is Section 442 inconsistent with any other rule promulgated by the Supreme Court that regulates the conduct of attorneys.

*Id.* at 278. Thus, part of this Court's rationale in concluding that former Section 442 of the Act did not violate the Article V, Section 10 was that a workers' compensation judge could approve attorneys' fees over the twenty percent ceiling if the quantitative and qualitative efforts of an attorney warranted the increased amount. The Court, however, also reasoned that Section 442 of the Act was not inconsistent with any Supreme Court rule that regulated the practice of law.

This Court reached a similar decision in *Lawson v. Workers' Compensation Appeal Board (Temple University)*, 857 A.2d 222, 225–26 (Pa.Cmwlth.2004), *appeal denied*, 582 Pa. 690, 870 A.2d 324 (2005), where we

quoted *Samuel* and observed that the petitioner-attorney had misunderstood Section 442 of the Act as a "legislative regulation prohibiting contingent fees." *Id.* at 226. The Court also referred to *Eugenie v. Workmen's Compensation Appeal Board (Sheltered Employment Service)*, 140 Pa. Cmwlth. 51, 592 A.2d 358, 362 (1991), where we noted that the Act provided workers' compensation judges with the authority to determine what fees were reasonable and that an attorney who disagrees with a workers' compensation judge's fee award may seek review of the fee decision before the Workers' Compensation Appeal Board and this Court.

In this case, Law Firm argues that these decisions are no longer applicable because of the General Assembly's 2006 amendment to Section 442 of the Act. Law Firm asserts that this Court should re-evaluate the issue in light of the amendment. Law Firm is correct that the amendment removed the power of a workers' compensation judge to award attorneys' fees greater than twenty percent in cases involving an award based upon a claim petition or a compromise and release, and appears to provide a workers' compensation judge the power to award reasonable award fees without regard to a percentage only in cases where a monetary award is not involved, such as termination.

We agree with Law Firm that because the amendment no longer permits a workers' compensation judge to consider awarding fees greater than twenty percent of an award, that aspect of the Court's rationale in *Samuel* no longer supports the argument that Section 442 of the Act does not violate Article V, Section 10 of the Pennsylvania Constitution. We must nevertheless consider whether our other observation in *Samuel*, that the ceiling did not violate any Supreme Court regulation regarding the practice of law, lends inde-

pendent support for the Department's assertion that the ceiling does not violate Article V, Section 10 of the Pennsylvania Constitution.

Rule 1.5 of the Rules of Professional Conduct provides, in pertinent part, as follows:

> (c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) [relating to domestic relations matters] or other law.

In *Samuel*, we addressed an attorney's claim that the former version of Section 442 of the Act constituted an unconstitutional intrusion into the Supreme Court's power to regulate the practice of law. The attorney in that case argued that the limitation on contingency fees in the former version conflicted with the guidelines the Supreme Court established in Rule 1.5 for determining reasonable fees. The attorney argued that the scheme described in the rule was comprehensive and that, therefore, the workers' compensation judge in that case should have interpreted the language of the rule as reflecting our Supreme Court's intent for tribunals or adjudicators to determine reasonable attorneys' fees by reference to those guidelines alone.

As this Court noted in *Samuel*, the Supreme Court's explanatory comment that accompanies Rule 1.5 specifically provides that "[a]pplicable law may impose limitations on contingent fees, such as a ceiling on the percentage." Based upon the provision of Rule 1.5 to permit contingency fees and the comment by the Supreme Court that pertinent law may impose limitations on contingent fees, including a ceiling on the percentage, we cannot agree with Law Firm that the amendment of Section 442 of the Act alters the analysis at issue in this case as indicated in *Samuel*. Rule 1.5 reflects the Supreme Court's determination that laws that the General Assembly adopts may set ceilings on the percentage of a workers' compensation settlement or award that an attorney may obtain in performing legal services for a claimant.

Further, we do not view the legal authority to which Law Firm refers as controlling the outcome in this case. Law Firm relies upon the Supreme Court's decision in *Wajert v. State Ethics Commission*, 491 Pa. 255, 420 A.2d 439 (1980). In that case, the State Ethics Commission, in an advisory opinion, concluded that a provision of the State Ethics Act [6] should be construed as prohibiting retired judicial officers from practicing law before the judicial tribunal in which he or she had served. A retired judicial officer brought a declaratory judgment action, seeking a declaration that the provision was unconstitutional as applied to judicial officers under the separation of powers doctrine. The Supreme Court quoted Pennsylvania Rule of Disciplinary Enforcement 103, which declares the Supreme Court's exclusive power to supervise the conduct of

---

**6.** Section 3(e) of the State Ethics Act, Act of October 4, 1978, P.L. 883, 65 P.S. § 403(e). The General Assembly reenacted and renumbered the State Ethics Act through the Act of June 26, 1989, P.L. 26, which renumbered Section 3(e) as 3(g). The General Assembly repealed the State Ethics Act by the Act of October 15, 1998, P.L. 729. Presently, Section 1103(g) of the Public Official and Employee Ethics Act, 65 Pa.C.S. § 1103(g), similarly purports to preclude former state officials and employees from representing others before the governmental agency for which he or she formerly worked for a period of one year following the termination of employment. The Supreme Court has held that this provision is unconstitutional as it applies to former attorneys. *Shaulis v. State Ethics Comm'n*, 574 Pa. 680, 833 A.2d 123 (2003).

Pennsylvania attorneys under Section 10(c) of Article V of the Pennsylvania Constitution. The Supreme Court concluded that the State Ethics Act's prohibition as applied to judicial officers constituted an infringement on the Supreme Court's power and held the provision unconstitutional as applied to judicial officers.[7]

In reaching its decision, the Supreme Court noted that it had already exercised its powers under Section 10(c) of Article V of the Pennsylvania Constitution to address the "mischief" the State Ethics Act sought to eliminate by adopting a rule prohibiting lawyers from accepting work in a legal matter in which the lawyer, in his previous capacity as a judicial officer, had already been involved.

We cannot dispute Law Firm's assertion that the Supreme Court's holding in *Wajert* stands for the proposition that, when our Supreme Court has adopted a particular rule that clearly addresses an aspect of attorney conduct, neither the legislative nor executive branches of the government generally may seek to regulate the same conduct. Nevertheless, we view the issue in *Wajert* as distinguishable from the issue in this case. The Supreme Court has crafted a rule that *relates* to the substantive elements that are relevant to the qualitative manner by which an attorney may establish a fee schedule for a particular client. As noted above, however, the Supreme Court has also specifically indicated that a pertinent law may limit the uppermost percentage of an award or judgment or settlement that a successful attorney may claim on a contingency basis. Thus, even if we regard Rule 1.5 as reflecting a comprehensive scheme relating to attorneys' fees, the Supreme Court has also approved of the General Assembly's pre-

rogative in certain matters to adopt laws placing a ceiling on the percentage of attorneys' fees an attorney may claim.

 Law Firm argues additionally that Section 442 of the Act is an unconstitutional violation of the separation of powers doctrine, which stands for the proposition "that the executive, legislative, and judicial branches of government are equal and none should exercise powers exclusively committed to another branch." *Jefferson Cty. Court Appointed Emp. Ass'n v. Pa. Labor Relations Bd.,* 603 Pa. 482, 491, 985 A.2d 697, 703 (2009) (*Jefferson*). It would seem counterintuitive to surmise that if the Supreme Court elected to defer to a legislative judgment regarding some aspect of the operation of the judiciary, such as the remuneration for attorneys representing claimants, the separation of powers doctrine would be implicated. The doctrine, however, "is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital ... namely, to preclude a commingling of these essentially different powers of government in the same hands." *O'Donoghue v. United States,* 289 U.S. 516, 530, 53 S.Ct. 740, 77 L.Ed. 1356 (1933). A significant purpose behind the separation of powers doctrine is to ensure that no one branch of government becomes more dominant than the others. As our Supreme Court stated in *Jefferson,* "[a] legislative action that impairs the independence of the judiciary in its administration of justice violates the separation of powers." *Jefferson,* 603 Pa. at 498–99, 985 A.2d at 707.

A review of the cases upon which Law Firm relies in asserting that Section 442 of the Act violates the separation of powers doctrine reflects that our courts have inte-

---

**7.** The Supreme Court referred to Code of Professional Responsibility DR 9–101(A), but in 1987, the Supreme adopted the Pennsylvania Rules of Professional Conduct, and those rules contain a similar provision—Rule 1.12(a).

grated to some extent the separation of powers doctrine and Article V of the Pennsylvania Constitution in analyzing such claims. For example, in *Lloyd v. Fishinger*, 529 Pa. 513, 605 A.2d 1193 (1992) (*Fishinger*), our Supreme Court considered a statute that prohibited attorneys from entering into contingency fee agreements to represent a client within fifteen days of the client's tort-related hospitalization. That case involved the question of whether the General Assembly could prohibit an attorney's right to enter into a contingency agreement. Although the Supreme Court's plurality opinion mentioned the separation of powers doctrine, the Supreme Court based its opinion in part on the fact that the Supreme Court had already acted through rulemaking to address the problem that the General Assembly sought to resolve. Thus, while the Supreme Court referenced the overarching separation of powers doctrine, it was the fact that the Supreme Court had already exercised its authority under its constitutional supervisory powers that rendered the statute unconstitutional.

Law Firm also relies upon this Court's decision in *Heller v. Frankston*, 76 Pa. Cmwlth. 294, 464 A.2d 581 (1983), *affirmed*, 504 Pa. 528, 475 A.2d 1291 (1984) (*Heller*).[8] *Heller* involved a challenge to a statute that placed a ceiling on contingency fees of twenty (20) to thirty (30) percent in certain medical malpractice matters. This Court first referred to the separation of powers doctrine in support of the notion that the regulation and disciplining of attorneys is a function of the Supreme Court that is not subject to intrusion by the legislative branch of government. *Id.* at 585. The Court proceeded, however, to evaluate the significance of Article V of the Pennsylvania Constitution, stating that "[i]ncluded in that 'regulated' conduct of attorneys which falls within the ambit of the constitutionally discrete power of the judiciary is the fee charged by lawyers." *Id.* at 586. The Court concluded that the contingency fee cap unconstitutionally infringed upon the Supreme Court's power to govern the activities of attorneys with regard to contingent fee agreements. Although the Court perceived the separation of powers doctrine as playing a role in its decision, we view the Court's decision as resting on the regulatory powers the Supreme Court exercises pursuant to Article V of the Pennsylvania Constitution. We also observe that the Court in *Heller* did not consider the language of Rule 1.5 when it rendered its decision,[9] and therefore, we conclude that the holding in *Heller* does not apply.[10]

The general rule that we distill from these decisions is that the separation of powers doctrine provides authority for the courts of the Commonwealth to invali-

---

**8.** The Supreme Court affirmed our decision in *Heller* on grounds unrelated to the issue of whether the contingency fee provision was unconstitutional.

**9.** The Supreme Court did not adopt Rule 1.5 until October 16, 1987.

**10.** Seitzinger also relies upon our Supreme Court's decision in *Commonwealth v. Stern*, 549 Pa. 505, 701 A.2d 568 (1997) (*Stern*), which involved an insurance statute that prohibited attorneys from compensating or giving things of value to a non-lawyer for client referrals. The Supreme Court, while recog-

nizing the separation of powers doctrine, concluded that the statute was unconstitutional based upon Article V of the Pennsylvania Constitution. The Supreme Court based its decision on the fact that the Supreme Court, pursuant to its powers under Article V, had already acted to address this conduct, and the General Assembly's enactment of a statute that sought to address the same conduct infringed on the Supreme Court's authority. Thus, the Supreme Court's approach in *Stern* is similar to its approach in *Fishinger* and our analysis in *Heller*.

date statutory provisions that intrude on the judicial prerogative to regulate the practice of law. That analysis, however, is guided by the specific authority vested in the Supreme Court through Article V of the Pennsylvania Constitution. While the separation of powers doctrine provides the general purpose behind the inquiry, the courts have evaluated such challenges by giving due consideration to the Supreme Court's supervisory powers under Article V, Section 10 of the Pennsylvania Constitution. In this case, our Supreme Court has indicated in Rule 1.5 that laws by the General Assembly may impose limitations on the percentage of an award an attorney may claim for fees. Consequently, we cannot agree with Law Firm that the statutory percentage limitation in the Act violates the separation of powers doctrine or the Supreme Court's constitutional supervisory powers under Article V, Section 10 of the Pennsylvania Constitution.

Moreover, Law Firm's challenge to the Act is facial in character. Law Firm does not and cannot explain how the provisions it is challenging, as applied, operate in a manner that necessarily precludes an award of reasonable attorneys' fees when the contingency fee ceiling is applied. In other words, on its face, the provision does not conflict with the Supreme Court's rule permitting reasonable attorneys fees in general; in application, the ceiling may provide for reasonable attorneys fees as that concept is reflected in Rule 1.5. Whether *application* of this rule in a particular instance could raise constitutional concerns simply is not before us. The Supreme Court has clearly indicated that pertinent laws may impose a ceiling on the percentage of an award an attorney may claim. In this case, the General Assembly

has adopted such a law, and we conclude that Section 442 of the Act is the type of law to which the Supreme Court refers in its comment to Rule 1.5. Based upon the foregoing, we will sustain the Department's preliminary objections to Law Firm's claim that Section 442 of the Act is unconstitutional.[11]

■ Additionally, Law Firm argues that Section 449 of the Act is vague and thereby violates the due process clause of the Fourteenth Amendment of the United States Constitution. Law Firm claims that the key sentence in that provision is vague. That sentence provides as follows:

> The workmen's compensation judge shall not approve any compromise and release agreement unless he first determines that the claimant understands the full significance of the agreement.

The courts have held that statutes should be sufficiently clear that a person of common intelligence need not guess at the meaning of the statute. *Commonwealth v. Mayfield*, 574 Pa. 460, 467, 832 A.2d 418, 422 (2003). We cannot conclude that Section 449 of the Act is unconstitutionally vague simply because it does not discuss a matter that is irrelevant to the purpose of the provision. As the Department points out, the purpose behind Section 449 of the Act is to prevent a claimant from entering into an improvident settlement agreement in lieu of litigation of a workers' compensation claim. Based upon the humanitarian and remedial purposes of the Act in general, the General Assembly sought to protect a claimant's rights by requiring a workers' compensation judge to review a proposed settlement agreement and to ensure that a claimant understands the legal ramifications of a proposed settlement.

---

11. For the reasons expressed above relating to Seitzinger's challenge to Section 442 of the Act, we also conclude that Section 449 of the Act, which relates to compromise and release agreements, does not violate the separation of powers doctrine.

Section 449 of the Act sets forth clearly the duties of a workers' compensation judge and the contents of a compromise and release agreement. The fact that the provision does not mention that attorneys' fees may be reflected in a compromise and release agreement does not alter the analysis in this case. By reference to Section 442 of the Act, a workers' compensation judge knows that such fees must be limited to no more than twenty percent of an award. As to the other substantive requirements for a compromise and release settlement and the approval thereof by a workers' compensation judge, we view the language as being clear and sufficient to advise a claimant and those interested in pursuing a compromise and release agreement of the information that is required in such an agreement. *See Cardwell v. Workers' Compensation Appeal Bd. (Illumelex Corp.)*, 786 A.2d 1014, 1017 (Pa. Cmwlth.2001), *appeal denied*, 569 Pa. 685, 800 A.2d 934 (2002).

Accordingly, we will sustain the Department's preliminary objections.[12]

### *ORDER*

AND NOW, this 28th day of July, 2011, the preliminary objections of the Respondents Department of Labor and Industry and the other individually named Respondents are sustained, and the petition for review is dismissed.

---

**12.** Because we have concluded that neither Section 442 of the Act nor Section 449 of the Act violate any of the constitutional provisions or rights upon which Seitzinger relies, we need not address the Department's argument that this Court should not exercise equity jurisdiction over Seitzinger's claims.