# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Thomas, : 
                 Appellant : 
                         : 
            v. : No. 29 C.D. 2016
                         : Argued: November 15, 2016
Patrick Grimm : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE ROBERT SIMPSON, Judge
                   HONORABLE P. KEVIN BROBSON, Judge

OPINION BY
JUDGE COHN JUBELIRER             FILED: February 17, 2017

Gregory Thomas (Thomas) appeals from the December 8, 2015 Order of the Court of Common Pleas of Washington County (common pleas), sustaining the Preliminary Objections (POs) of Patrick Grimm, common pleas' Court Administrator, (Defendant) and dismissing the Complaint filed by Thomas following his resignation from his employment with common pleas in 2014. At issue is the applicability of the Whistleblower Law[1] to judicial employees. On appeal, Thomas alleges that: (1) common pleas erred in sustaining Defendant's POs because the Pennsylvania Supreme Court negated any separation of powers

_____

[1] Act of December 12, 1986, P.L. 1559, as amended, 43 P.S. §§ 1421-1428. "An employee alleging a violation of the Whistleblower Law must show, by a preponderance of the evidence, that prior to the adverse employment action, the employee reported in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." Bailets v. Pa. Turnpike Comm'n, 123 A.3d 300, 308 (Pa. 2015); see also Section 4(b) of the Whistleblower Law, 43 P.S. § 1424(b).

concerns by expressly invoking the Whistleblower Law in its Code of Conduct For Employees of the Unified Judicial System (Code of Conduct)[2] and in a document entitled "A Progress Report on Implementation of the Recommendations of the Interbranch Commission on Juvenile Justice" (Progress Report);[3] (2) this Court's

---

[2] As a result of the Progress Report on Implementation of the Recommendations of the Interbranch Commission on Juvenile Justice (Progress Report), see infra note 3, the Supreme Court adopted a Code of Conduct with the following language:

**VIII. DUTY TO REPORT**

 **A.** Employees of the Unified Judicial System shall report to their immediate supervisor any attempt by anyone to induce them to violate any provision of this Code of Conduct or any policy of the Unified Judicial System.

> *Note: Pennsylvania's Whistleblower Law (43 P.S. § 1421 et seq.) prohibits, among other things, the discrimination or retaliation against an employee who makes a good faith report of wrongdoing or participates in an investigation, hearing or inquiry held by an appropriate authority.*

(Code of Conduct for Employees of the Unified Judicial System (Code of Conduct), SUPREME COURT OF PENNSYLVANIA, Oct. 1, 2010, at 7, R.R. at 52a (emphasis in original).)

[3] The Progress Report updated the public on the progress that resulted from the Pennsylvania Supreme Court's joining with the Executive and Legislative branches of government to create the Interbranch Commission on Juvenile Justice (ICJJ). The ICJJ was tasked with investigating the juvenile justice scandal in Luzerne County, Pennsylvania, and developing appropriate recommendations to improve Pennsylvania's juvenile justice system. In May 2010, the ICJJ released its report of recommendations. The Supreme Court took action in response to the ICJJ's recommendations by promulgating, *inter alia*, the Code of Conduct, about which the Progress Report states, as follows:

> This Court specifically mandated the addition of a paragraph addressing . . . [the] Whistleblower Law (43 P.S. § 1421) which protects employees from retaliation for good faith reporting of wrongdoing in the court system and participation in any ensuing investigation. Pennsylvania's judicial employees (approximately 15,000) now have an explicit duty to report any violation of the Code of Conduct or any policy of the court system without fear of retaliation.

**(Footnote continued on next page…)**

decision in <u>Russo v. Allegheny County</u>, 125 A.3d 113 (Pa. Cmwlth. 2015), <u>aff'd</u>, 150 A.3d 16 (Pa. 2016), is inapplicable here; and (3) the Legislature waived the Commonwealth's sovereign immunity for claims against judicial employees under the Whistleblower Law. (Thomas's Br. at 15, 21, 23, 25.) Upon review, we affirm.

## I. Background

### A. The Complaint

Thomas initially filed his Complaint in the United States District Court for the Western District of Pennsylvania (District Court) against: Washington County, Pennsylvania; Defendant; Daniel Clements, Chief of Juvenile Probation; and Thomas Jess, Deputy Court Administrator (collectively, Defendants). (Compl. ¶¶ 4-7.) In that Complaint, Thomas asserted claims arising under the Whistleblower Law (Count I) and the First and Fourteenth Amendments to the United States Constitution (Count II) pursuant to Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Thomas sought lost wages and fringe benefits, compensatory and punitive damages, and attorneys' fees and costs. (Compl., Prayer for Relief ¶¶ (c)-(e), R.R. at 12a.)

Thomas subsequently requested that the District Court dismiss Count II as against all of the Defendants, which the District Court approved. (Plaintiff's Notice of Dismissal of Only First Amendment Claim, Certified Record; Order of

_____

(continued…)

(Chief Justice Ronald D. Castille, A Progress Report on Implementation of the Recommendations of the Interbranch Commission on Juvenile Justice, SUPREME COURT OF PENNSYLVANIA, Mar. 1, 2011, at 1, 3, R.R. at 42a, 44a.)

3

Court, both filed July 13, 2015, R.R. at 16a.) By order dated July 15, 2015, the District Court thereafter declined to exercise jurisdiction over Thomas's remaining state law claim under the Whistleblower Law and dismissed the action without prejudice to Thomas refiling in a state court. (Dist. Ct. Order, R.R. at 17a.) Thomas then re-filed his Complaint against the Defendants in common pleas[4] asserting that he was terminated by the Defendants in retaliation for his making a good faith report of wrongdoing in violation of the Whistleblower Law. (Compl. ¶ 30, R.R. at 1a, 11a.)

The allegations in his Complaint are as follows. Thomas began working for common pleas as a Juvenile Probation Officer on October 26, 2009. (Compl. ¶ 8.) In August of 2012, the President Judge of common pleas (PJ) held a meeting for all Juvenile Probation staff after an anonymous letter surfaced regarding alleged illegal activity by Clements in the Juvenile Probation Office. (Id. ¶ 11.) The PJ allegedly told everyone at the meeting that if they spoke negatively about Clements or the probation office, they would be fired. (Id.) Thomas was not at the meeting, but Jess told him what the PJ said. (Id. ¶ 12.) All staff in the Juvenile Probation Office must complete 40 hours of training each year, and in July of 2014, Clements

---

[4] Defendants Washington County, Clements, and Jess collectively filed POs to the Complaint and a brief in support of their POs, in which they moved to dismiss the Complaint against them. (Certified Record (C.R.) at 5, 10.) On September 8, 2015, those three defendants moved for the appointment of an out-of-county judge to preside over the matter, which was granted by common pleas. (Motion for Appointment of Out of County Judge, C.R. at 7; Common Pleas' Docket, R.R. at 63a.) Common pleas thereafter requested that the Supreme Court appoint a judge, which was granted by order dated October 2, 2015. (Request for Assignment of Judge, filed Oct. 21, 2015, C.R. at 9; Common Pleas' Docket, R.R. at 63a.) By Order dated December 8, 2015, the Complaint against defendants Washington County, Clements, and Jess was dismissed with prejudice pursuant to a Stipulation for Dismissal signed by the parties. (Stipulation for Dismissal Pursuant to Rule 229 of the Pennsylvania Rules of Civil Procedure; Order of Court, C.R. at 14.)

directed Thomas to email the purchasing department stating that mixed martial arts training occurred on June 6 and 7. (Id. ¶¶ 15-16.) Clements told Thomas exactly what to write in the email and even gave Thomas a name of the training instructor. (Id. ¶ 16.) Clements received the funding, and told Thomas that he attended the training. (Id. ¶ 17.)

In September 2014, Defendant and Jess notified Thomas of an investigation by the Washington County District Attorney's Office concerning the misappropriation of funds by the Juvenile Probation Office, and that detectives would be meeting with him. (Id. ¶¶ 18-19.) Defendant spoke with Thomas privately and reiterated that Thomas did nothing wrong and praised his work performance in the office. (Id. ¶ 20.) On September 26, 2014, Thomas was suspended by Defendant and Jess pending an investigation, and he was directed to turn in his badge and firearm, but was not told why he was being suspended. (Id. ¶ 21.) Thomas was interviewed by detectives on October 7, 2014, during which Thomas told the truth, that he never attended the training. (Id. ¶ 23.) Clements allegedly had told Thomas to tell detectives otherwise. (Id. ¶ 22.) Thomas met with Defendant the next day. (Id. ¶ 24.) Defendant told Thomas he was being fired for four reasons: not disciplining a subordinate; not checking to see if certain staff had the proper clearances; improperly completing a grant packet; and failing to keep personnel files on certain staff. (Id. ¶ 27a-d.) Defendant gave Thomas the option to either resign or be fired. (Id. ¶ 29.) Thomas thereafter handed a resignation letter to Defendant that he prepared just in case. (Id. ¶ 30.) Thomas argues that he did report wrongdoing and the misappropriation of funds when he spoke to detectives. (Id. ¶ 32.)

5

*B. Defendant's POs*

Defendant filed POs to the Complaint alleging that: (1) "[t]he Whistleblower Law does not apply to judicial employees because doing so would violate . . . [the] separation of powers doctrine" (PO I); (2) Defendant "is entitled to sovereign immunity in his official capacity" and no exceptions to the defense apply (PO II); and (3) Thomas did not assert a viable claim under the Whistleblower Law (PO III). (POs, R.R. at 20a-21a.) Defendant also filed a brief in support of his POs.

In support of PO I, Defendant argued that "[o]nly the Supreme Court has the authority to supervise the [J]udiciary, and only the [J]udiciary has the authority to hire, supervise, and discharge judicial employees." (Defendant's Br. in Support of POs, R.R. at 25a.) In support of PO II, Defendant argued that he is immune from suit when he is acting in his official capacity, as a suit against him is really a suit against common pleas, and the Legislature has not waived sovereign immunity here. (Id. at 27a.) With regard to PO III, and in the alternative, Defendant argued that even if the Whistleblower Law is applicable to judicial employees, Thomas has not met the requirement of that law that he report any instance of "wrongdoing or waste." (Id. at 28a.)

Thomas filed a response in opposition to Defendant's POs arguing that: (1) judicial employees are protected under the Whistleblower Law because of the Supreme Court's specific mandate in its Code of Conduct and Progress Report that employees report wrongdoing, and Russo is inapplicable; (2) the Legislature waived sovereign immunity under that law, as evidenced by the definitions of "employer" and "public body" set forth in Sections 1 and 2 of the Whistleblower Law, 43 P.S. §§ 1421-1422, which includes all bodies created or funded in any

6

amount by the state; and (3) in the alternative, Thomas did report wrongdoing under the law as that term is defined in Section 3 of the Whistleblower Law, 43 P.S. § 1423(b). (Thomas's Response in Opposition to POs, R.R. at 33a-40a.) Defendant filed a reply to Thomas's response in opposition to the POs, citing this Court's decision in Russo as support.

### C. Common Pleas' Orders

After consideration of the parties' briefs and oral argument,[5] common pleas sustained Defendant's POs and dismissed Thomas's action with prejudice by Order dated December 8, 2015. (Common Pleas Order, Dec. 8, 2015, R.R. at 59a.) Thomas filed a Notice of Appeal in common pleas on January 7, 2016. As a result, common pleas filed another order on March 8, 2016, pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(a),[6] explaining the reasoning for the December 8, 2015 Order as follows. As a matter of law, judicial employees are "not the subject matter of the [Whistleblower Law.]" (Common

---

[5] In his Notice of Appeal, Thomas certified that there is no transcript of the proceedings because there was no hearing. (Notice of Appeal, filed Jan. 7, 2016.)

[6] Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure provides, as follows:

**(a) Opinion in support of order.**

(1) *General rule.*--Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

\* \* \*

Pa. R.A.P. 1925(a).

7

Pleas Order, Mar. 8, 2016, at 1.)  The state has not waived immunity for the Judiciary under the Whistleblower Law, and thus, "the separation of powers doctrine maintains that discipline within the unified [J]udiciary is exclusively the province of the Pennsylvania Supreme Court."  (Id.)  In accordance with Russo, although the Supreme Court's Code of Conduct and Progress Report mention the Whistleblower Law, the documents did not per se adopt the law as binding on the Judiciary.  (Id. at 2.)  This appeal followed.[7]

## II.  Proceedings Before this Court

### A. *Thomas's Motions*

At the outset, Thomas has requested that this Court take judicial notice of: the *revised* Code of Conduct, which was edited in May 2016, after Thomas's appeal and common pleas' certification of the record; and the Supreme Court's Policy on Non-Discrimination and Equal Employment Opportunity (Non-Discrimination Policy).  Because the two documents are available on the Unified Judicial System's (UJS) website, Thomas argues that 225 Pa. Code § 201 (permitting the court to take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"), applies.  (Motion for Judicial Notice of Two PA Supreme Court Documents, filed July 28, 2016, at 1-2.) Thomas has appended the documents to his brief.  (Thomas's Br., Exs. A-B.)  The

---

[7] Our "review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to a determination of whether that court abused its discretion or committed an error of law."  Shields v. Council of Borough of Braddock, 111 A.3d 1265, 1268 n.4 (Pa. Cmwlth. 2015) (citation omitted).

8

*revised* Code of Conduct removed any reference to the Whistleblower Law.[8] In his brief to this Court, Thomas argues that the Non-Discrimination Policy supports his argument that the Whistleblower Law applies here because the Non-Discrimination Policy outlines detailed internal complaint procedures that employees may follow and does not reference any other anti-discrimination laws providing protection to employees, unlike the revised Code of Conduct which does not mention any internal complaint procedure that must be followed by employees and which specifically cited to the Whistleblower Law as providing protection to employees. (Thomas's Br. at 18-19.)

_____

[8] The Code of Conduct now reads, as follows:

**VIII. DUTY TO REPORT**

    **A.**    Employees of the Unified Judicial System shall report to their immediate supervisor any attempt by anyone to induce them to violate any provision of this Code of Conduct or any policy of the Unified Judicial System. Discrimination or retaliation against an employee based on a good faith report of wrongdoing or participation in an investigation, hearing or inquiry held by an appropriate authority is strictly prohibited.

    **B.**    Employees who are arrested, charged with, or convicted of a crime (other than summary traffic offenses that do not hinder or prevent the performance of their official duties) in any jurisdiction shall report this fact to their immediate supervisor at the earliest reasonable opportunity.

    **C.**    Employees of the Unified Judicial System shall, upon request, be required to complete and file a personal statement of financial disclosure on a form to be provided by the AOPC for this purpose for any period during which they were employed by the Unified Judicial System.

(Code of Conduct for Employees of the Unified Judicial System, SUPREME COURT OF PENNSYLVANIA, revised May 2016, at 8.)

9

Generally, an appellate court may consider only the facts which have been certified in the record on appeal. Rule 1921 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1921. Extra-record documents "cannot become part of the record on appeal merely by being appended . . . to a brief." Hempfling v. Unemployment Comp. Bd. of Review, 850 A.2d 773, 777 (Pa. Cmwlth. 2004). However, "appellate courts may take judicial notice of extra-record materials where it is appropriate to do so and where notice could not have been taken by the trial court." G. Darlington, K. McKeon, D. Schuckers & K. Brown, Pennsylvania Appellate Practice § 1921:10.1 (West 2016-2017). We will take judicial notice of the revised Code of Conduct, the accuracy of which is undisputable, and which occurred after common pleas certified the record. However, although the Non-Discrimination Policy may indicate that there is no elaborate internal complaint procedure for whistleblower claims, Thomas could have raised this argument before common pleas instead of raising it for the first time in his brief to this Court. Thus, for purposes of the instant appeal, we decline to take judicial notice of the Non-Discrimination Policy. See Pa. Bankers Ass'n v. Pa. Dep't of Banking, 962 A.2d 609, 621 (Pa. 2008) ("It is well settled that issues raised for the first time on appeal are waived.").

Thomas also filed a Petition for *Nunc Pro Tunc* Relief (Petition) on October 20, 2016, requesting that this Court exercise its discretion pursuant to Rule 105 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 105,[9] to consider his Reply Brief, which was filed one day late, as timely filed. In the Petition,

---

[9] Rule 105 of the Pennsylvania Rules of Appellate Procedure provides that "an appellate court may . . . disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction." Pa. R.A.P. 105.

Thomas's counsel (Counsel) states that his secretary made an error in electronically submitting the Reply Brief and asserts that he served a copy of it on opposing counsel on October 19, 2016, the day the Reply Brief was due. Counsel, realizing the error, filed his Reply Brief with the Court the next day, without objection. We grant the Petition.

### B. *Parties' Arguments on Appeal*

On appeal, Thomas argues that common pleas erred in sustaining Defendant's POs because the Supreme Court negated any separation of powers concerns by expressly invoking the Whistleblower Law in its Code of Conduct and Progress Report. Specifically, Thomas contends that he is permitted to invoke the Whistleblower Law's protections because his whistleblower claim arose in 2014, and the reference to the Whistleblower Law in the Code of Conduct was not removed until May 2016. Thomas further argues that Russo is not applicable here because this Court did not consider the Code of Conduct and Progress Report. Thomas also contends that the Legislature waived the Commonwealth's sovereign immunity for claims against judicial employees under the Whistleblower Law.

In response, Defendant asserts that the Whistleblower Law does not apply to judicial employees because that would impermissibly violate Pennsylvania's separation of powers by allowing the legislative branch to dictate how the Judiciary makes employment decisions, and, even if the law did apply to judicial employees, the claim against Defendant in his official capacity is barred in its entirety based on sovereign immunity. (POs ¶¶ 1-2.) In the alternative, Defendant argues that Thomas has not made a viable claim under the Whistleblower Law. (POs ¶ 3.)

11

*C. Discussion*

When reviewing a court of common pleas' decision to sustain preliminary objections in the nature of a demurrer, "our standard of review is *de novo* and our scope of review is plenary." Owens v. Lehigh Valley Hosp., 103 A.3d 859, 862 n.4 (Pa. Cmwlth. 2014) (citation omitted).

> We may affirm a grant of preliminary objections only when it is clear and free from doubt that, based on the facts pled, the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. In evaluating the legal sufficiency of the challenged pleading, we accept as true all well-pled, material, and relevant facts alleged and every inference that is fairly deducible therefrom.

Id. (internal citations omitted). However, "the court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." Shields v. Council of Borough of Braddock, 111 A.3d 1265, 1268 (Pa. Cmwlth. 2015) (citation omitted).

The primary issue in this case is whether the Whistleblower Law applies to judicial employees. Thomas argues that the Whistleblower Law applies to the Judiciary by its plain language pursuant to the definition of "employer" and, specifically, "public body" under Section 2 of the Whistleblower Law,[10] because

---

[10] Under Section 2 of the Whistleblower Law, 43 P.S. § 1422, an "employer" is defined as a "public body" or an individual, partnership, association, corporation for profit, or a corporation not for profit. A "public body" is defined as:

(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the *executive branch* of State government.

(1.1) The *General Assembly* and its agencies.

**(Footnote continued on next page…)**

12

the Judiciary is a body "created . . . or which is funded in any amount by or through [the] Commonwealth." 43 P.S. § 1422. Thomas further argues that, even if the Judiciary is not considered a "public body," the Supreme Court's voluntary reference to the Whistleblower Law in its Code of Conduct and Progress Report requires that this Court conclude that the Whistleblower Law applies to the Judiciary and, specifically, to Defendant, an issue not addressed by <u>Russo</u>.

We note initially that there is no reference to the Judiciary in the definition of "employer" or "public body." Moreover, in <u>Russo</u>, 125 A.3d at 121, this Court held that the Whistleblower Law does not apply to the Judiciary, and the Supreme Court affirmed. In <u>Russo</u>, Russo filed a complaint after his employment with the Court of Common Pleas of Allegheny County (county court) terminated in 2009. <u>Id.</u> at 114. Russo asserted five causes of action including various claims based on alleged violations of his employment contract, common law claims, and a statutory whistleblower claim. <u>Id.</u> at 115. The county court filed preliminary objections, arguing, *inter alia*, that "as a court of the [UJS,] it is a part of the Commonwealth government and entitled to sovereign immunity as a Commonwealth entity[,]" and that the Whistleblower Law does not apply to the court. <u>Id.</u> at 116. This Court

---

**(continued…)**

> (2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

> (3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

<u>Id.</u> (emphasis added).

13

agreed and held that the "[county court], as a court of the [UJS], is entitled to the sovereign immunity of the Commonwealth." Id. at 117.[11]

As for Russo's whistleblower claim, this Court considered the plain language of the Whistleblower Law. In reviewing the Whistleblower Law's definitions of "employer," defined as a "public body," the Court observed that "the text of the Whistleblower Law does not conclusively resolve the issue of whether the [L]egislature intended it to apply to judicial employers" and acknowledged that the definition of "public body" in Section 2 could be read broadly to apply to the Judiciary. Id. at 120 (footnote omitted). However, the Court found it significant that the Legislature's most recent amendment to the definition of "public body" in 2014, which made the Whistleblower Law applicable to legislative employees, did not also specify that it was applicable to the Judiciary. Id. at 120-21. The Court also agreed with the analysis in Jakomas v. McFalls, 229 F. Supp. 2d 412, 422-24

---

[11] The Court based its conclusion on the following authorities: Article I, Section 11 of the Pennsylvania Constitution, Pa. Const. art. I, § 11 (providing that the Commonwealth may only be sued where the legislature has authorized suit); 1 Pa. C.S. § 2310 (providing that it "be the intent of the [Legislature] that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the [Legislature] shall specifically waive the immunity"); Article V, Section 1 of the Pennsylvania Constitution, Pa. Const. art. V, § 1 ("judicial power of the Commonwealth shall be vested in a unified judicial system"); Article V, Section 10(a) and (c) of the Pennsylvania Constitution, Pa. Const. art. V, § 10(a), (c) ("Supreme Court shall exercise general supervisory and administrative authority over all the courts" and "shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts . . . including . . . the administration of all courts and supervision of all officers of the Judicial Branch"); Section 301(4) of the Judicial Code, 42 Pa. C.S. § 301(4) (courts of common pleas included in the UJS); Section 102 of the Judicial Code, 42 Pa. C.S. § 102 (defining "Commonwealth government" to include "the courts and other officers or agencies of the unified judicial system"); and case law holding, *inter alia*, that Magisterial District Judges and judges of the courts of common pleas are officers of the Commonwealth and thus "enjoy sovereign immunity except where abrogated by the state." Russo, 125 A.3d at 116-17 (citations omitted).

14

(W.D. Pa. 2002), which, based on a review of the enforcement mechanisms in the Whistleblower Law, held that the Legislature did not intend to apply the Whistleblower Law to employment decisions by the courts and that doing so would violate separation of powers principles under the Pennsylvania Constitution because the judge in the case had exclusive authority to hire or discharge his employees, and remedies under the Whistleblower Law could not be enforced against the judge under Pennsylvania law. The Court therefore determined that the remedies under the Whistleblower Law would be unconstitutional as applied against court employers because those remedies "would interfere with the exclusive right of courts to supervise their employees." Russo, 125 A.3d at 121.[12] Moreover, "[b]ecause the Whistleblower Law would infringe on separation of powers and would only be partly enforceable against judicial employers," we concluded that the Legislature "did not intend the [J]udiciary to be included within the definition of an employer subject to the Whistleblower Law." Id.

Our decision in Russo, which our Supreme Court has affirmed, is controlling here to the extent that it held that the Whistleblower Law does not apply to the Judiciary because the Legislature did not intend to include the Judiciary within the definition of an "employer" subject to the Whistleblower Law and that doing so

---

[12] Section 5 of the Whistleblower Law, 43 P.S. § 1425, provides the enforcement mechanism of the Whistleblower Law and states, as follows:

> A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court shall also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the complainant prevails in the civil action.

Id.

15

would violate the separation of powers.  However, the Court in <u>Russo</u> did not consider whether the Supreme Court voluntarily agreed to extend the application of the Whistleblower Law to the Judiciary by referencing the Whistleblower Law in the Code of Conduct and Progress Report, as this argument was apparently not raised by the parties.  For that reason, Thomas contends that <u>Russo</u>'s holding does not control the outcome of this case.  Thomas analogizes this situation to that in <u>Seitzinger v. Commonwealth</u>, 25 A.3d 1299 (Pa. Cmwlth. 2011), in which the Court did not apply the holding of a prior opinion, which appeared to be binding precedent, because the prior opinion did not consider the argument currently being made.[13]  We agree that <u>Russo</u> did not address whether the Supreme Court's reference to the Whistleblower Law in the Code of Conduct at the time Thomas's whistleblower claim allegedly arose in 2014 evidences the Supreme Court's intent to bring the judicial branch within the purview of the Whistleblower Law.  Upon review, we conclude that the Supreme Court did not so intend.

---

[13] In <u>Seitzinger</u>, the petitioners argued that the fee-limitation provisions contained in the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, <u>as amended</u>, 77 P.S. §§ 1-1041.4, 2501-2708, unconstitutionally violated the Supreme Court's constitutional authority to regulate the legal profession under Article V, Section 10 of the Pennsylvania Constitution and the separation of powers doctrine, relying on, *inter alia*, the holding in <u>Heller v. Frankston</u>, 464 A.2d 581 (Pa. Cmwlth. 1983), <u>aff'd</u>, 475 A.2d 1291 (Pa. 1984) (holding that a contingency fee cap in certain medical malpractice matters unconstitutionally infringed upon the Supreme Court's power to govern the activities of attorneys with regard to contingent fee agreements). <u>Seitzinger</u>, 25 A.3d at 1305-06.  However, the Court in <u>Seitzinger</u> noted that <u>Heller</u> did not consider Rule 1.5 of the Rules of Professional Conduct, 204 Pa. Code § 1.5 cmt. 3 (providing that fees may be contingent on the outcome of a matter, and further providing, in the explanatory comment accompanying the rule, that "[a]pplicable law may impose limitations on contingent fees, such as a ceiling on the percentage"), which was raised in <u>Seitzinger</u>.  <u>Seitzinger</u>, 25 A.3d at 1306.  The Court in <u>Seitzinger</u> therefore concluded that the holding in <u>Heller</u> did not apply and proceeded to consider the issue in light of Rule 1.5.  <u>Seitzinger</u>, 25 A.3d at 1306.

The doctrine of separation of powers is inherent in the Pennsylvania Constitution and recognizes that "the legislature, executive and judiciary are *independent*, *co-equal* branches of government and no branch may exercise the functions specifically committed to another branch." Russo, 125 A.3d at 119 (emphasis added). The Pennsylvania Constitution grants the Supreme Court "general supervisory and administrative authority" and "the power to prescribe general rules governing practice, procedure and the conduct of all courts" of the UJS. Pa. Const. art. V, § 10(a), (c). Also implicit in those powers is the power of the Judiciary to hire, fire, and supervise court employees, which is "essential to the maintenance of an independent judiciary." Jefferson Cnty. Court Appointed Emps. Ass'n v. Pa. Labor Relations Bd., 985 A.2d 697, 707 (Pa. 2009). Thus, pursuant to the separation of powers, the principle of which "is the cornerstone of our democratic form of government," Heller, 464 A.2d at 585, "the [L]egislature may not exercise any power specifically entrusted to the [J]udiciary . . . ," Kremer v. State Ethics Commission, 469 A.2d 593, 595 (Pa. 1983). Furthermore, "[i]t is the bedrock of judicial independence and the touchstone of Pennsylvania jurisprudence whenever the court's independence is at issue." Jakomas, 229 F. Supp. 2d at 423.

Moreover, the Pennsylvania Supreme Court has been extremely vigilant in protecting its independence and the responsibilities specifically entrusted to it under the Pennsylvania Constitution, including its supervisory and administrative authority over all Pennsylvania courts, court personnel, and attorneys. See, e.g., Jefferson Cnty., 985 A.2d at 710 (holding, *inter alia*, that "the Judiciary's constitutional right to hire, fire, and supervise its employees was violated when the County, via its Salary Board, eliminated . . . five trial court employee positions"); Gmerek v. State Ethics Comm'n, 751 A.2d 1241 (Pa. Cmwlth. 2000), aff'd by an

17

equally divided court, 807 A.2d 812 (Pa. 2002) (holding that the prior Lobbying Disclosure Act,[14] infringes on the Supreme Court's exclusive jurisdiction to regulate the conduct of attorneys);  L.J.S. v. State Ethics Comm'n, 744 A.2d 798, 803 (Pa. Cmwlth. 2000) (holding that the State Ethics Commission lacked jurisdiction to pursue an investigation of a county's chief adult probation officer, who "is subject to the supervision and discipline of our . . . Supreme Court").

With this background, we examine the reference to the Whistleblower Law in the version of the Code of Conduct in effect at the time Thomas's whistleblower claim allegedly arose, which stated, in pertinent part, as follows:

## VIII. DUTY TO REPORT

A.    Employees of the Unified Judicial System shall report to their immediate supervisor any attempt by anyone to induce them to violate any provision of this Code of Conduct or any policy of the Unified Judicial System.

> *Note: Pennsylvania's Whistleblower Law (43 P.S. § 1421 et seq.) prohibits, among other things, the discrimination or retaliation against an employee who makes a good faith report of wrongdoing or participates in an investigation, hearing or inquiry held by an appropriate authority.*

(Code of Conduct for Employees of the Unified Judicial System, SUPREME COURT OF PENNSYLVANIA, Oct. 1, 2010, at 7, R.R. at 52a (emphasis in original).)  Thomas argues that the Note's reference to the Whistleblower Law was meant to make that law applicable to the Judiciary.  However, even assuming that the Supreme Court could, constitutionally, expand the scope of the Whistleblower Law to cover

---

[14] Act of October 15, 1998, P.L. 729, 65 Pa. C.S. §§ 1301-1311, deleted by the Act of November 1, 2006, P.L. 1213.  A similar act is now found in 65 Pa. C.S. §§ 13A01-13A11.

judicial employers,[15] we disagree that the mere description of the Whistleblower Law in a Note in Section VIII of the Code of Conduct demonstrates the Court's intent to bring the Judiciary under the scope of that law.

The Code of Conduct was promulgated pursuant to the Supreme Court's supervisory authority under the Pennsylvania Constitution. Section VIII, Duty to Report, requires all UJS employees to report to their immediate supervisor any attempt by anyone to induce them to violate the Code of Conduct or other policy of the UJS.[16] A Note then describes the Whistleblower Law, which is an example of the public policy in favor of protecting those who report violations of the law or other policy. However, it is just a description: there is nothing in the Note that either makes the Whistleblower Law applicable to the Judiciary, or indicates the Court's intent to bring the Judiciary within the scope of that law. Given the great vigilance and care with which the Supreme Court has protected the independence of the Judiciary and the separation of powers, more than just a general description of a legislative enactment would be necessary to demonstrate the Court's intent to bring the Judiciary under the scope of the Whistleblower Law.

Moreover, there are other instances where the Supreme Court has, through its own rulemaking power, advanced the same public policy that the Legislature has established through its legislation. For example, in Kremer, the Court held that

---

[15] See Jefferson Cnty., 985 A.2d at 707 ("[a] legislative action that impairs the independence of the [J]udiciary . . . violates the separation of powers; the corollary [of which] is that a judicial action that infringes on the legislative function also violates the separation of powers.").

[16] The Code of Conduct is eight pages long and can be found on pages 46a-53a of the Reproduced Record.

the financial disclosure requirements of the former State Ethics Act (Ethics Act)[17] were unconstitutional as applied to judges[18] because it infringed on the Court's power to supervise the courts. The Court noted that, pursuant to its supervisory authority over the courts, it had previously adopted a Code of Judicial Conduct, applicable to judges, which contained detailed provisions designed to prevent conflicts of interest, financial or otherwise, and which advanced the same interests sought to be preserved through enforcement of the Ethics Act. The Court stated that "[i]f further refinement [wa]s required, it must be accomplished through rules promulgated by th[e Supreme] Court and not by legislative enactment." Kremer, 469 A.2d at 595-96. "[T]he rule-making function is within th[e] Court's power of supervising the judicial system and therefore is not subject to such legislative regulation . . . ." Id. (citing In Re 42 Pa. C.S. § 1703, 394 A.2d 444, 451 (Pa. 1978) (noting that "[t]he Pennsylvania Constitution grants the [J]udiciary and the [J]udiciary alone power over rule-making")). Thus, even though the Supreme Court and the Legislature may both advance similar objectives, such as those in Kremer and with regard to the protection of those who report wrongdoing, the Court does so *independently* through the promulgation of its own rules, policies, and procedures. We see no indication that the Supreme Court intended any different approach here.

In fact, as Thomas himself points out, the Supreme Court did refine and clarify the Code of Conduct in May 2016, by removing the reference to the

---

[17] Act of June 26, 1989, P.L. 26, as amended, formerly 65 P.S. §§ 401-413, repealed by Section 6(a)(2) of the Act of October 15, 1998, P.L. 729.

[18] Section 2 of the Ethics Act, formerly 65 P.S. § 402, defined "public official" as an elected or appointed executive, legislative, or judicial official of the Commonwealth or a political subdivision. Kremer, 469 A.2d at 594.

Whistleblower Law and adding the following language prohibiting discrimination and retaliation within the UJS: "Discrimination or retaliation against an employee based on a good faith report of wrongdoing or participation in an investigation, hearing or inquiry held by an appropriate authority is *strictly prohibited*." (Code of Conduct for Employees of the Unified Judicial System, SUPREME COURT OF PENNSYLVANIA, revised May 2016, at 8 (emphasis added).) Adding this language, which mimics that of Section 4(b) of the Whistleblower Law, 43 P.S. § 1424(b), reaffirms the Court's intent to honor the separation of powers and the *exclusive* right of court employers to supervise their employees. See, e.g., First Judicial Dist. v. Pa. Human Rel. Comm'n, 727 A.2d 1110, 1112 (Pa. 1999) (holding that the Pennsylvania Human Relations Commission has no jurisdiction to adjudicate complaints against the judicial branch based on the separation of powers doctrine); Court of Common Pleas of Erie Cnty. (6th Judicial Dist.) v. Pa. Human Rel. Comm'n, 682 A.2d 1246, 1248 (Pa. 1996) (holding that the Pennsylvania Human Relations Commission is prohibited from hearing a discharged court employee's discrimination claim under the separation of powers doctrine); Matter of Antolik, 501 A.2d 697, 701 (Pa. Cmwlth. 1985) (holding that a county nepotism rule encroached upon the Judiciary's right to hire, fire, and supervise court employees, and the application of the rule to a promotion decision violated the separation of powers doctrine); Eshelman v. Comm'rs of Berks Cnty., 436 A.2d 710, 713 (Pa. Cmwlth. 1981) (holding that a labor arbitration award's provisions governing employee rest periods, leaves of absence, seniority, classification, and grievance procedure were invalid because they usurped the power of the courts over the hiring, supervision, and discharge of court employees).

### III. Conclusion

For the foregoing reasons, we hold that common pleas did not err by sustaining Defendant's POs and dismissing the Complaint filed by Thomas following his resignation from employment with common pleas in 2014.[19] Accordingly, we affirm common pleas' December 8, 2015 Order.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Cosgrove did not participate in the decision in this case.

---

[19] Because we determine that the Whistleblower Law does not apply to the Judiciary, we need not address Thomas's argument that the Legislature waived the Commonwealth's sovereign immunity for claims against judicial employees under the Whistleblower Law.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Thomas, : 
          Appellant : 
                     : 
                     : 
          v. :   No. 29 C.D. 2016
                     : 
Patrick Grimm : 

## **O R D E R**

NOW, February 17, 2017, the December 8, 2015 Order of the Court of Common Pleas of Washington County, entered in the above-captioned matter, which sustained the Preliminary Objections of Patrick Grimm and dismissed the Complaint filed by Gregory Thomas (Thomas), is **AFFIRMED**. It is further **ORDERED** that:

Thomas's Motion for Judicial Notice of Two PA Supreme Court Documents is **GRANTED** to the extent it requests that this Court take judicial notice of the Supreme Court of Pennsylvania's Code of Conduct for Employees of the Unified Judicial System (revised May 2016), and **DENIED** to the extent it requests that this Court take judicial notice of the Supreme Court's Policy on Non-Discrimination and Equal Employment Opportunity (revised November 2013).

Thomas's Petition for *Nunc Pro Tunc* Relief is **GRANTED**.

 

                                    _____
                                    **RENÉE COHN JUBELIRER,** Judge