IN THE COMMONWEALTH COURT OF PENNSYLVANIA

S.E.N.,                              :
                    Petitioner       :
                                     :
        v.                           : No.  651 C.D. 2023
                                     : Argued:  May 7, 2024
Department of Education              :
(Professional Standards and          :
Practices Commission),               :
                    Respondent       :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE WALLACE                          FILED:  August 28, 2024


        S.E.N. (Teacher) petitions for review of the Department of Education
(Department) Professional Standards and Practices Commission's (Commission)
May 22, 2023 order granting the Department's request for an immediate suspension
of Teacher's Pennsylvania teaching certificate pursuant to Section 9.2 of the
Educator Discipline Act[1] (Act), 24 P.S. § 2070.9b.[2]  Upon review, we affirm.

## I.    Background

        The facts essential to our disposition in this matter are not contested.  The
Department issued Teacher's Pennsylvania teaching certificates in 2007 and 2011.

---

[1]   Act of Dec. 12, 1973, P.L. 141, *as amended*, 24 P.S. §§ 2070.1a – 2070.18c.

[2]   Added by the Act of Dec. 20, 2000, P.L. 918.

Reproduced Record (R.R.) at 107a, 132a. At all times relevant to this appeal, the Titusville Area School District (District) employed Teacher as an educator. *Id.* By stipulation, Teacher acknowledged: (a) she was in a romantic relationship with a registered sex offender (Sexually Violent Predator[3]), (b) she knew Sexually Violent Predator "was a convicted sex offender with reporting requirements," (c) she "allowed [Sexually Violent Predator] into her home" where she resided with her minor daughter, and (d) Sexually Violent Predator was charged with engaging in indecent contact with Teacher's minor daughter. *See* Teacher's Br. at 30-31.

Because Teacher knowingly allowed Sexually Violent Predator into her home with her minor daughter, the Pennsylvania State Police charged Teacher with endangering the welfare of children pursuant to 18 Pa.C.S. § 4304(a)(1).[4] R.R. at 107a, 132a. Teacher waived her preliminary hearing on November 30, 2022, and the magisterial district judge bound the charge to the Venango County Court of Common Pleas. *Id.* at 108a, 133a, 164a-65a.

On February 15, 2023, the Department filed a Notice of Charges (Notice) against Teacher with the Commission. *See* R.R. at 106a-21a. In the Notice, the Department requested the immediate suspension of Teacher's Pennsylvania teaching certificate pursuant to Section 9.2 of the Act, 24 P.S. § 2070.9b. *See* R.R. at 106a-10a. Section 9.2 of the Act requires the Commission to:

---

[3] On January 31, 2012, following an assessment by the Sexual Offender Assessment Board and a hearing pursuant to 42 Pa.C.S. § 9799.24, the Venango County Court of Common Pleas classified Teacher's paramour as a sexually violent predator. *See* R.R. at 51a, 206a. A sexually violent predator is an individual who has been convicted of certain sexually violent offenses and "due to a mental abnormality or personality disorder," the individual is "likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12.

[4] "A parent . . . of a child under 18 years of age . . . commits an offense [of endangering the welfare of children] if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1).

[d]irect the [D]epartment to immediately suspend the certificate and employment eligibility of an educator indicted for a crime set forth in section 111(e)(1) through (3) of the act of March 10, 1949 (P.L. 30, No. 14), known as the "Public School Code of 1949,"[5] or the attempt, solicitation or conspiracy to commit any crime set forth in that section **if the [C]ommission, after notice and hearing if requested, determines that the educator poses a threat to the health, safety or welfare of students or other persons in the schools of this Commonwealth** . . . .

24 P.S. § 2070.9b(a)(1) (emphasis added).

Teacher filed a Response to the Notice and requested a hearing on the Department's request to immediately suspend her Pennsylvania teaching certificate. R.R. at 132a-36a. Teacher admitted she was charged with endangering the welfare of children, which is a crime set forth in Section 111(e)(1) of the Public School Code of 1949, 24 P.S. § 1-111(e)(1). R.R. at 132a-33a; Teacher's Br. at 6-7. Teacher specifically denied, however, that she posed "a threat to the health, safety, or welfare of students or other persons in the schools of this Commonwealth." R.R. at 133a. Teacher also requested the Commission accept an affidavit[6] in lieu of immediately suspending her Pennsylvania teaching certificate. *Id.* at 135a.

---

5  Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.

6  Section 9.2(a)(1)(ii) of the Act provides:

> The [C]omission may elect not to direct the [D]epartment to suspend the certificate an employment eligibility of an educator indicated for a crime under this subsection if the educator files an affidavit attesting that during the pendency of the criminal proceeding the educator will not be employed in a position that requires certification or involves direct contact with children or students. The [C]omission shall not accept an affidavit when the allegations that form the basis of the criminal proceeding involve sexual misconduct or sexual abuse or exploitation of a child or student.

24 P.S. § 2070.9b(a)(1)(ii).

In response, the Department argued the Commission could not accept Teacher's affidavit because Section 9.2(a)(1)(ii) of the Act prohibits the Commission from accepting an affidavit in lieu of an immediate suspension "when the allegations that form the basis of the criminal proceeding involve sexual misconduct or sexual abuse or exploitation of a child or student." R.R. at 150a-53a; 24 P.S. § 2070.9b(a)(1)(ii).

By order dated March 14, 2023, the Commission scheduled an administrative hearing to receive evidence regarding the Notice. R.R. at 156a. By order dated March 16, 2023, the Commission denied Teacher's request to accept an affidavit in lieu of an immediate suspension. *Id.* at 159a.

At the administrative hearing, the Department requested admission of the criminal complaints against Teacher and Sexually Violent Predator, as well as documents related to Sexually Violent Predator's previous criminal convictions. *Id.* at 47a-49a. Teacher objected to the admission of the criminal complaints because they contained hearsay. *Id.* at 50a. Teacher also objected to the admission of documents related to Sexually Violent Predator's previous convictions because they contained hearsay and because their prejudice "far outweigh[ed] any probative value." *Id.* The Department responded by arguing the documents were not hearsay because they were "not being offered . . . for the truth of the matter." *Id.* at 51a. The hearing examiner overruled Teacher's objections and admitted the documents. *Id.* at 51a-56a.

Before resting its case, the Department presented the testimony of Mike McGaughey (McGaughey), Assistant Superintendent for the District. R.R. at 56a-58a. McGaughey explained that Teacher primarily taught online classes in the District's online education program, which he supervised, from the District's cyber

4

center within its high school. *Id.* at 58a-60a. Teacher, as a District employee, received annual trainings about reporting instances of child abuse. *Id.* at 61a-62a.

McGaughey also explained that Venango County Children and Youth Services (CYS) informed the District about allegations it received of Teacher committing an act of child abuse (permitting Sexually Violent Predator to live with her minor daughter). R.R. at 62a. As a result of those allegations, the District implemented a safety plan on March 4, 2022, to keep Teacher from having any unsupervised, in-person contact with students. *See id.* at 62a-65a. This safety plan required the District to move Teacher's room to a location where District administrators could supervise her and where she could enter and exit the building without interacting with students. *Id.* On April 13, 2022, after CYS informed the District that it concluded its investigation and determined Teacher committed an act of child abuse, and that Teacher was appealing CYS's determination, the District reaffirmed and reinstituted its safety plan. *Id.* at 76a.

In June of 2022, the District implemented a new safety plan to accommodate Teacher's decision to teach an in-person summer school class. R.R. at 66a. To ensure Teacher was never alone with students, the District hired a full-time aide. *Id.* In August of 2022, the District implemented yet another safety plan to allow Teacher to instruct online classes and have no unsupervised, in-person contact with students, essentially returning to the March and April safety plans. *Id.* at 67a. McGaughey admitted that if the District believed Teacher posed a threat to the health, safety, or welfare of students, it would not have been willing to continue to employ her. *Id.* at 73a.

After the Pennsylvania State Police charged Teacher with endangering the welfare of children in November of 2022, the District placed Teacher on paid

5

administrative leave. R.R. at 69a. The District changed Teacher's paid administrative leave to an unpaid suspension on December 12, 2022. *Id.* at 81a-82a. McGaughey admitted Teacher's suspension was not based on any classroom performance-based reasons, but on her arrest and pending criminal charges. *Id.* at 82a-83a.

Teacher offered the testimony of Frederick Smith (Smith), a high school teacher and President of the District's teachers' union. *Id.* at 87a-88a. Smith attended Teacher's various safety plan meetings and communicated with a union steward from the Pennsylvania State Education Association. *Id.* at 89a. Smith was also present when Teacher informed the District of her criminal charges in November of 2022. *Id.* at 91a. Smith testified that other teachers were aware of the situation involving Teacher and her daughter due to a newspaper article and social media posts, yet none of the teachers expressed concerns to Smith about Teacher's continued employment. *Id.* at 93a. Smith also testified that he was not "aware of any incidents that indicated that [Teacher] constituted a risk to the safety and welfare of students at school while she continued to work for the [D]istrict between March and November 2022." *Id.*

The Commission reviewed the record of the administrative hearing as well as the parties' briefs and oral arguments. R.R. at 329a. The Commission determined that admission of documents from Teacher's and Sexually Violent Predator's criminal cases "does not run afoul of the hearsay rule" because "the truth of those allegations is immaterial because the Commission makes no assertion about the educator's guilt or innocence of the charges alleged in the indictment." *Id.* at 338a. In addition, the Commission opined that "an indictment alone can satisfy both prongs of the Department's burden because the indictment is an 'objective fact' that

6

must be based upon probable cause to believe the educator committed the acts charged." *Id.* at 337a (citations omitted). Thus, according to the Commission, an immediate suspension of a teacher's certificate is "merely a means of safeguarding the Commission's legitimate interest in removing educators who may constitute a threat to the health, safety or welfare of students, the teachers or the school and in preserving the integrity of the profession." *Id.* (citations omitted). Alternatively, the Commission opined it did not need to rely upon the criminal complaints, because Teacher stipulated to the essential facts. *See id.* at 338a.

Addressing Teacher's argument that there was no nexus between her conduct and the schools of the Commonwealth, the Commission concluded:

> Every educator in this Commonwealth has a duty to protect students from harm. 22 Pa. Code § 235a(b)(4). Likewise, parents owe their children a duty of care, protection, and support. Despite these duties and the fact that [Teacher] is a trained mandated reporter of child abuse who no doubt understands the dangers posed by a sexual predator, [Teacher] is accused of knowingly exposing her own child to a known convicted child sexual predator for years, resulting in the child be[ing] abused.

R.R. at 340a. Thus, the Commission concluded the Department "has proven by a preponderance of the evidence that [Teacher] poses a threat to the health, safety, or welfare of students or other persons in the schools of the Commonwealth," and the Commission ordered the Department to immediately suspend Teacher's Pennsylvania teaching certificate pursuant to 24 P.S. § 2070.9b(a)(1). *Id.* at 334a-41a.

## II.    Issues

Teacher petitions for review of the Commission's order and asserts the following issues for our consideration: (1) the Commission erred in basing its factual

7

findings on objected-to, uncorroborated hearsay evidence; (2) competent and substantial evidence does not support the Commission's order; (3) the Commission erred in determining Teacher posed a threat to the health, safety, or welfare of students or other persons in the schools of this Commonwealth because there was no nexus between her conduct and school students or school safety; (4) the Commission's order violates Teacher's constitutional due process rights; (5) the Commission's order violates Teacher's constitutional right to reputation; and (6) the Commission's order violates Teacher's constitutional rights of free association and free speech.[7]

Teacher attached two exhibits (the extra-record exhibits) to her brief in this appeal which were not part of the Certified Record. The first, Exhibit B, was an August 31, 2023 order of the Court of Common Pleas of Venango County dismissing the criminal case against Teacher pursuant to Pennsylvania Rule of Criminal Procedure 586.[8] The second, Exhibit C, was an updated criminal docket sheet for

---

[7] We have reorganized and reframed Teacher's issues presented for ease of analysis.

[8] Rule 586 governs "Court Dismissal Upon Satisfaction or Agreement" as follows:

> When a defendant is charged with an offense which is not alleged to have been committed by force or violence or threat thereof, the court may order the case to be dismissed upon motion and a showing that:
>
> (1) the public interest will not be adversely affected; and
>
> (2) the attorney for the Commonwealth consents to the dismissal; and
>
> (3) satisfaction has been made to the aggrieved person or there is an agreement that satisfaction will be made to the aggrieved person; and
>
> (4) there is an agreement as to who shall pay the costs.

Pa.R.Crim.P. 586.

Sexually Violent Predator's criminal case, indicating the Commonwealth withdrew the charge of indecent assault, and Sexually Violent Predator pled guilty to a charge of corruption of minors on June 22, 2023.

The Department filed an Application to Strike with this Court, seeking to have the extra-record exhibits stricken from Teacher's brief because the extra-record exhibits are not part of the Certified Record, and they are not relevant to the validity of the Department's immediate suspension. Teacher filed a Response (Response) to the Department's Application to Strike, requesting this Court take judicial notice of the extra-record exhibits because they are publicly available and were not available at the time of the administrative hearing. By order dated November 13, 2023, this Court listed the Department's Application to Strike and Teacher's Response "for consideration with the merits of the appeal."

### III. Analysis

Our review of orders of the Commission "is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence." *R.W. v. Dep't of Educ., Pro. Standards & Pracs. Comm'n*, 304 A.3d 79, 86 n.8 (Pa. Cmwlth. 2023) (citation omitted). "Substantial evidence is any relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Bumba v. Penn. State System of Higher Educ.*, 734 A.2d 36, 37 n.1 (Pa. Cmwlth. 1999) (citation omitted). While hearsay evidence can be considered in administrative proceedings, substantial evidence cannot be established solely through uncorroborated hearsay evidence. *Bucks Cnty. Child. & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare*, 808 A.2d 990, 993 (Pa. Cmwlth. 2002) (citation omitted).

9

Before addressing the merits of Teacher's appeal, we address the Department's Application to Strike the extra-record exhibits, which Teacher asks us to consider through judicial notice. "Generally, an appellate court may consider only the facts which have been certified in the record on appeal." *Thomas v. Grimm*, 155 A.3d 128, 134 (Pa. Cmwlth. 2017) (citing Pa. R.A.P. 1921). "Extra-record documents 'cannot become part of the record on appeal merely by being appended . . . to a brief.'" *Id.* (citation omitted). Appellate Courts may, however, "take judicial notice of extra-record materials where it is appropriate to do so and where notice could not have been taken by the [body below]." *Id.* (citation omitted).

Section 9.2(a)(1) of the Act requires the Commission to direct the Department to immediately suspend an educator's Pennsylvania teaching certificate based upon an indictment for certain crimes and a determination, after a hearing if the educator so requests, that the educator "poses a threat to the health, safety or welfare of students or other persons in the schools of this Commonwealth." 24 P.S. § 2070.9b(a)(1)(iii). Due to the necessity to quickly remove teachers who pose a threat to individuals in schools, the Commission must make its determination based upon information available at the time. Rather than permitting an educator to revisit the Commission's determination based upon the ultimate outcome of her criminal charges, Section 9.2(a)(1)(iii) of the Act requires the Commission to "direct the [D]epartment to immediately lift a suspension upon receipt of certified court documents establishing that the charges have been dismissed or otherwise removed." 24 P.S. § 2070.9b(a)(1)(iii).

Therefore, when charges against an educator are ultimately dismissed, the educator's remedy is to have the Department lift the immediate suspension of her Pennsylvania teaching certificate. The educator cannot retroactively use the

dismissal of the charges against her to argue the Commission erred in directing the immediate suspension of her Pennsylvania teaching certificate. Applying this principle to Teacher, our inquiry is limited to whether the Department carried its burden of proving the elements necessary for an immediate suspension of Teacher's Pennsylvania teaching certificate based upon the information available at the time. The extra-record exhibits are not relevant to our inquiry. Therefore, it would be inappropriate to take judicial notice of the extra-record exhibits, and we grant the Department's Application to Strike Exhibit B and Exhibit C to Teacher's brief.

## A. Hearsay & Substantial Evidence

Teacher's first and second arguments on appeal are that the Commission erred in basing its decision upon uncorroborated hearsay evidence and that, as a result, the Commission's decision is not supported by substantial, competent evidence. The Commission's decision does not need to rely on uncorroborated hearsay evidence, because Teacher conceded the essential facts in this matter. Specifically, Teacher conceded she was in a romantic relationship with Sexually Violent Predator and allowed Sexually Violent Predator into her home with her minor daughter despite knowing Sexually Violent Predator was a convicted sex offender with reporting requirements. *See* Teacher's Br. at 30-31. These facts alone constitute substantial evidence to support the Commission's conclusion that immediate suspension was necessary to avoid a threat to the health, safety or welfare of students or others in the schools of this Commonwealth. Accordingly, Teacher's first and second arguments on appeal fail.

## B. Nexus

Teacher next argues the Commission erred in determining there was a nexus between her domestic situation involving an "alleged act of omission rather than

11

commission" and the health, safety, or welfare of a school community. *See* Teacher's Br. at 15. To support her position, Teacher references a previous Commission decision wherein an educator left her six-year-old son alone in her house for approximately two and one-half hours while she was drinking and eating at a neighbor's house. *Id.* (citation to Commission decision omitted). After the child woke up, went outside, and locked himself out of the house, the educator was charged with endangering the welfare of children. *Id.* at 16. The Commission determined the allegations were not sufficient to show the educator posed a threat to students or others in school. *Id.* Based upon the Commission's decision for that educator, Teacher argues "charges based on domestic situations that do not involve affirmative acts of misconduct by the educator are insufficient to justify immediate suspension of a certificate." *Id.*

In response, the Department argues that in addition to having a duty to protect students from harm, *see* 22 Pa. Code § 235.5a(b)(4),[9] Teacher "is a mandatory reporter of suspected child abuse and was regularly trained in the recognition and reporting of suspected child abuse." Department's Br. at 16. Because Teacher is alleged to have failed to recognize the danger posed by a convicted, sexually violent predator or the signs of abuse in her daughter, the Department argues Teacher is unable to protect the students entrusted to her care. *Id.* at 16-18.

In addition, the Department argues the Commission's inquiry must be fact specific. Department's Br. at 20. The Department noted the Commission has immediately suspended educators' teaching certificates numerous times when their criminal charges did not result from conduct that directly involved a school or

_____

[9] "The primary professional obligation of educators is to the students they serve." 22 Pa. Code § 235.5a(a). "In fulfillment of the commitment to students, educators . . . [s]hall exert reasonable effort to protect students from harm." 22 Pa. Code § 235.5a(b)(4).

students. *Id.* at 20-22. These cases involved charges of possession with the intent to deliver or manufacture controlled substances, other drug-related felonies, domestic violence against romantic partners or the educator's children, improper physical discipline of the educator's children, assault of a law enforcement officer, masturbation while operating a vehicle without allegations of a child observing the act, and the purchase of alcohol for a minor in exchange for a favor. *Id.* at 20-22 (citations to Commission decisions omitted).

Initially, we reject Teacher's assertion that the charges against her are related to her failure to act rather than her affirmatively committing an act. While Teacher is alleged to have failed to safeguard her daughter, Teacher acted to allow Sexually Violent Predator to reside in her home with her minor daughter, knowing he was a convicted sex offender. Therefore, Teacher's criminal charges stemmed from her affirmative acts.

We also reject Teacher's assertion that all "charges based on domestic situations that do not involve affirmative acts of misconduct by the educator are insufficient to justify immediate suspension of a certificate because there is not a nexus." *See* Teacher's Br. at 16. Instead, we agree with the Department and the Commission that the Commission must consider the specific facts and circumstances in each case to determine whether an educator poses a threat to the health, safety or welfare of students or others in school.

When considering conduct that occurred outside a school, the Commission has traditionally sought to determine if the conduct has a nexus to the health, safety, or welfare of students or others in schools. Merriam-Webster's dictionary defines a "nexus" as: (a) "connection, link," (b) "a causal link," and (c) "a connected group or series." *See* https://www.merriam-webster.com/dictionary/nexus (last visited

13

August 26, 2024). In the context of Section 9.2 of the Act, to support an immediate suspension of an educator's Pennsylvania teaching certificate, there must be some causal connection, or nexus, between the educator's purported conduct and the health, safety, or welfare of students or other persons in schools.

Contrary to Teacher's position, this causal connection does not need to be direct and immediate. Instead, the educator's purported conduct must call into question the educator's ability to protect the health, safety, or welfare of students. Some allegations may be so specific to a domestic situation that they do not implicate the educator's professional capabilities. Some allegations may call into question whether the educator is, herself, a direct threat to the health, safety, or welfare of her students. Other allegations may call into question whether the educator possesses the discernment to protect the health, safety, or welfare of students.

We agree with the Commission that Teacher's actions demonstrated an inability, despite Teacher's child abuse training, to recognize and prevent child abuse. A teacher that cannot identify and protect against threats of this nature poses a grave harm to students. Accordingly, we agree with the Commission's determination Teacher's actions had a sufficient nexus to school safety and Teacher posed a threat to the health, safety, or welfare of students in the schools of the Commonwealth.

## C. Substantive Due Process

Next, Teacher argues the Commission's order violates her substantive due process right to engage in the profession of her choosing. A Pennsylvania "teaching certificate is a constitutionally protected property right entitled to due process protections." *Petron v. Dep't of Educ.*, 726 A.2d 1091, 1093 (Pa. Cmwlth. 1999). The right to pursue a profession is, however, "not a fundamental right for substantive

14

due process purposes." *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 945 (Pa. 2004) (citing *Gambone v. Commonwealth*, 101 A.2d 634, 636-37 (Pa. 1954)). In *Ladd v. Real Estate Commission*, 230 A.3d 1096 (Pa. 2020), the Pennsylvania Supreme Court set forth the substantive due process analysis for one's right to pursue a profession, as follows:

> Article I, [s]ection 1 of the Pennsylvania Constitution provides "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1. Our case law explains that, included within the right to possess property and pursue happiness, is the right to pursue a chosen occupation. *See Nixon* [*v. Commonwealth*], 839 A.2d [277,] 288 [(Pa. 2003)], *citing Adler v. Montefiore Hosp. Ass'n of Western Pa.*, . . . 311 A.2d 634, 640-41 ([Pa.] 1973) and *Gambone*, 101 A.2d at 636-37. However, unlike the rights to privacy, marry, or procreate, the right to choose a particular occupation, although "undeniably important," is not fundamental. *Nixon*, 839 A.2d at 287. The right is not absolute and its exercise remains subject to the General Assembly's police powers, which it may exercise to preserve the public health, safety, and welfare. *Gambone*, 101 A.2d at 636. But, the General Assembly's police powers are also limited and subject to judicial review. *Id.*
>
> A claim . . . that a Pennsylvania statute violates substantive due process is subject to a "means-end review" where the court "weigh[s] the rights infringed upon by the law against the interest sought to be achieved by it, and also scrutinize[s] the relationship between the law (the means) and that interest (the end)." *Nixon*, 839 A.2d at 286-87, *citing Adler*, 311 A.2d at 640-41. The level of scrutiny we apply to that means-end review is dependent upon the nature of the right allegedly infringed. When that right is fundamental, we apply strict scrutiny and will uphold the law only if it is narrowly tailored to achieve a compelling state interest. *Id.* at 287. A right that is not fundamental, however, is subject to rational basis review. *Id.* The rational basis test under Pennsylvania law is less deferential to the legislature than its federal counterpart. *Shoul* [*v. Dep't of Transp., Bureau of Driver Licensing*], 173 A.3d [669,] 677 [(Pa. 2017)].

Pennsylvania's less deferential, "more restrictive" test, provides:

> [A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts.

> *Id.*, *quoting Gambone*, 101 A.2d at 636-37 (citation and footnotes omitted) and *citing Nixon*, 839 A.2d at 287 n.15 (recognizing "more restrictive" test).

*Ladd*, 230 A.3d at 1108-09 (footnotes omitted).

The Pennsylvania Supreme Court has held that "[s]tates have a strong interest in regulating the practice of professions within their borders, and they have broad power to establish standards for licensing all types of professional practitioners in order to protect the valid interests of the public." *Khan*, 842 A.2d at 947. Further, "[a] state may impose those professional requirements that it believes necessary to protect its citizenry." *Id.* at 948.

Section 111(e)(1) of the Public School Code of 1949 prohibits persons who have been convicted of certain enumerated crimes from being employed in the public or private schools of the Commonwealth. *See* 24 P.S. § 1-111(e)(1). This prohibition seeks to protect students and others in schools from dangerous persons. Section 9.2 of the Act addresses the situation where a certified educator is charged with one of Section 111(e)(1)'s enumerated offenses. To protect students and other

16

persons in schools while the educator's criminal case is pending, Section 9.2 of the Act provides for the immediate suspension of the educator's teaching certificate if the Commission determines the educator poses a threat to the health, safety, or welfare of students or other persons in schools. If the educator is ultimately convicted of the crime, that educator is disqualified from employment in a public or private school pursuant to Section 111(e)(1) of the Public School Code of 1949.

To safeguard the educator's rights, Section 9.2(a)(1)(ii) permits the Commission to accept an affidavit from the educator providing "during the pendency of the criminal proceeding" she will not "be employed in a position that requires certification or involves direct contact with children or students." 24 P.S. § 2070.9b(a)(1)(ii). The legislature, however, prohibited the Commission from accepting an affidavit in lieu of an immediate suspension "when the allegations that form the basis of the criminal proceeding involve sexual misconduct or sexual abuse or exploitation of a child or student." *Id.* As an additional safeguard to the educator's rights, if the charges against the educator are ultimately "dismissed or otherwise removed," the Department must lift the immediate suspension. 24 P.S. § 2070.9b(a)(1)(iii).

An immediate suspension of an educator's teaching certificate pending resolution of an educator's criminal case is not unreasonable, unduly oppressive, or patently beyond the necessities of the case. Instead, it protects students and others in the schools of the Commonwealth when a certified educator is charged with a serious criminal offense, while also providing safeguards to the accused educator. In addition, an immediate suspension has a real and substantial relation to the protection of students and others in the schools of this Commonwealth.

Accordingly, we conclude Section 9.2(a) of the Act does not violate Teacher's substantive due process rights.

## D. Reputational Rights

Next, Teacher argues the Commission's order violates her right to reputation under article I, section 1 of the Pennsylvania Constitution. A person's right to reputation is fundamental, and is therefore subject to strict scrutiny. *Nixon*, 839 A.2d at 286-87. Under strict scrutiny, a statute that infringes upon a fundamental right must be narrowly tailored to achieve a compelling state interest. *Id.* at 287. Teacher claims her right to reputation was infringed by the Commission's order because it "designat[ed Teacher] as a threat to school students." *See* Teacher's Br. at 44. Teacher admits the state's interest is compelling in this case but argues an immediate suspension of a teaching certificate is not narrowly tailored to address that state interest because "[l]ess draconian actions than certificate suspension were available," such as continued use of safety plans and acceptance of an affidavit in lieu of an immediate suspension. *See id.* at 43.

As the Department noted, however, when the Commission accepts an affidavit in lieu of an immediate suspension, it takes no formal action against the educator's teaching certificate. As a result, nothing would prevent a new school district, which may be unaware of the affidavit, from hiring and employing the educator. Thus, an affidavit in lieu of an immediate suspension only protects students and others in the schools of the Commonwealth if the educator voluntarily complies with the affidavit. It is likely for this reason that the Commission generally has *discretion* to accept or reject an affidavit in lieu of an immediate suspension. *See* 24 P.S. § 2070.9b(a)(1)(ii) (the Commission "may elect" to accept an affidavit in lieu of an immediate suspension).

18

The General Assembly has removed the Commission's discretion and forbids it from accepting an affidavit in lieu of an immediate suspension in only one circumstance: "when the allegations that form the basis of the criminal proceeding involve sexual misconduct or sexual abuse or exploitation of a child or student." *Id.* Unlike subsection (a)(1), which provides an explicit list of criminal charges that can support an immediate suspension, subsection (a)(1)(ii) utilizes broad language to include any criminal proceedings that involve allegations of sexual misconduct, abuse, or exploitation of a child. *See* 24 P.S. § 2070.9b(a)(1)(ii). Thus, in the limited context of allegations involving sexual misconduct, abuse, or exploitation of a child or student, the General Assembly has chosen to ensure accused offenders do not have access to *any* schools in the Commonwealth while they face criminal charges.

Teacher was charged with endangering the welfare of children pursuant to 18 Pa.C.S. § 4304(a)(1). This crime requires proof that a parent "knowingly endangers the welfare of the child by violating a duty of care, protection or support." *Id.* The basis for the allegations against Teacher was that she violated a duty of care and protection to her minor daughter by knowingly exposing her daughter to a registered sex offender, who was then accused of having committed sexual offenses against her daughter. *See* R.R. at 116a. These allegations "involve sexual misconduct or sexual abuse or exploitation of a child." *See* 24 P.S. § 2070.9b(a)(1)(ii). Therefore, the Commission was not permitted to accept Teacher's affidavit in lieu of an immediate suspension. *Id.* Regarding safety plans, the District only instituted its safety plans after CYS alerted the District to the allegations against Teacher. In addition, the District's safety plans are specific to the District and would not transfer with Teacher if a different school district hired her. Like an affidavit in lieu of an immediate suspension, the Commission does not have the authority to

19

require a school to implement a safety plan for Teacher, nor can the Commission take any action, short of suspending Teacher's Pennsylvania teaching certificate, which would prevent Teacher from being employed in other schools in the Commonwealth without a safety plan.

Finally, as an added safeguard for educators, Section 9.2(a)(1)(iii) of the Act requires the Commission to direct the Department to "immediately lift a suspension upon receipt of certified court documents establishing that the charges have been dismissed or otherwise removed." 24 P.S. § 2070.9b(a)(1)(iii). In addition, Section 9.2(a)(2) requires the Commission to direct the Department to revoke an educator's Pennsylvania teaching certificate upon conviction, yet "immediately reinstate a certificate and employment eligibility upon receipt of certified court documents establishing that the conviction was reversed." 24 P.S. § 2070.9b(a)(2). Thus, the Department may only maintain an immediate suspension while an educator is facing criminal prosecution and may only maintain a revocation for so long as the educator's conviction stands.

Because neither an affidavit in lieu of an immediate suspension nor a safety plan can ensure the protection of students and others in schools throughout the Commonwealth, and because Section 9.2 of the Act limits the duration of immediate suspensions, we conclude the Commission's immediate suspension of Teacher's Pennsylvania teaching certificate is narrowly tailored to achieve the Commonwealth's compelling state interest in maintaining the safety of students and others in the Commonwealth's schools. Therefore, the Commission did not violate Teacher's right to reputation under the Pennsylvania Constitution when it issued an order immediately suspending Teacher's Pennsylvania teaching certificate.

20

**E.  Free Association and Free Speech**

Finally, Teacher argues the Commission's order violates her rights to free association and free speech under the First Amendment to the United States Constitution.  Teacher asserts these provisions "restrict the ability of the State to impose liability on an individual solely because of her association with another person."  *See* Teacher's Br. at 44.  Therefore, Teacher asserts she should not be punished for the acts of Sexually Violent Predator.  *Id.* at 44-47.

Contrary to Teacher's assertion, the Commission did not immediately suspend her Pennsylvania teaching certificate because Sexually Violent Predator was charged with having indecent contact with Teacher's daughter.  The Commission immediately suspended Teacher's Pennsylvania teaching certificate because Teacher admitted she knew Sexually Violent Predator was a convicted sex offender, yet she welcomed him into the home she shared with her minor daughter, thereby providing Sexually Violent Predator with the opportunity to have indecent contact with her daughter.

In addition, Teacher bases her argument entirely on criminal cases where courts deemed an individual's *guilt* could not be based solely upon his association with other actors.  *See* Teacher's Br. at 44-45.  Teacher has presented no authority or argument to extend these principles beyond criminal cases.  *Id.*  The Commission's immediate suspension of Teacher's Pennsylvania teaching certificate is not a criminal proceeding, and the Commission did not determine Teacher's guilt or innocence of a crime.  Therefore, we reject Teacher's arguments that the Commission's order violated her right of free speech or free association under the United States Constitution.

## IV.     Conclusion

For the reasons outlined above, we affirm the Commission's order immediately suspending Teacher's Pennsylvania teaching certificate.

 

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

S.E.N.,                                    :
                          Petitioner       :
                                           :
        v.                                 : No.  651 C.D. 2023
                                           :
Department of Education                    :
(Professional Standards and                :
Practices Commission),                     :
                          Respondent       :


**O R D E R**


**AND NOW**, this 28th day of August 2024, the May 22, 2023 order of Professional Standards and Practices Commission is **AFFIRMED**.  In addition, the Department of Education's October 3, 2023 Application to Strike is **GRANTED**, and the Prothonotary is directed to strike Exhibit B and Exhibit C from Petitioner's Brief.


_____
STACY WALLACE, Judge