IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard C. Culbertson,                           :
                          Petitioner             :
                                                 :
         v.                                       :        No. 90 C.D. 2023
                                                 :
Pennsylvania Public Utility                      :        Submitted: August 9, 2024
Commission,                                      :
                          Respondent             :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED: September 30, 2024

        Richard C. Culbertson (Culbertson), proceeding *pro se*, petitions for
review of the December 8, 2022 order of the Pennsylvania Public Utility Commission
(Commission).  Relevant here, the Commission's order adopted the Recommended
Decision of Deputy Chief Administrative Law Judge Christopher P. Bell and
Administrative Law Judge John Coogan (ALJs), thereby (1) approving without
modification two proposed settlements with regard to Columbia Gas of Pennsylvania,
Inc.'s (Columbia) proposed general rate increase for 2022, (2) denying Culbertson's
exceptions to the ALJs' Recommended Decision, and (3) dismissing Culbertson's
complaint against Columbia.  In effect, the Commission's order reduced Columbia's
proposed 2022 base rate revenue increase from $82.2 million to $44.5 million.

        In this Court, Culbertson argues that (1) the Commission did not conduct
an adequate investigation into Columbia's proposed rate increase; (2) he was denied
due process because he did not participate in settlement negotiations; and (3) the rates

established in the Commission-approved settlements are not just, reasonable, or in furtherance of the public interest. After careful review, we affirm.[1]

## I.     BACKGROUND AND PROCEDURAL HISTORY

"Columbia is a public utility and natural gas distribution company which delivers natural gas service to approximately 440,000 residential, commercial, and industrial customers in portions of [26] counties in Pennsylvania, primarily in the western half of [Pennsylvania] and in parts of Northwest, Southern, and Central Pennsylvania."[2] (Commission Op., at 5; Supplemental Reproduced Record (S.R.)[3] at 0493a.) On March 18, 2022, Columbia filed Supplement No. 337 to its tariff to become effective for services rendered on or after May 17, 2022. Supplement No. 337 contained proposed increases in Columbia's base distribution rates, which increases

---

[1] This matter is not the first in which Culbertson has challenged a base rate increase proposed by Columbia. Culbertson challenged Columbia's proposed rate increase for 2021, which also resolved by settlement. *See Culbertson v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 152 C.D. 2022, filed August 17, 2023) (*Culbertson I*). In *Culbertson I*, Culbertson lodged challenges to Columbia's base rates and the Commission's investigative process. Specifically, Culbertson asserted that (1) the Commission should have audited Columbia in accordance with various auditing and accounting standards; (2) the Commission violated Culbertson's rights to due process; and (3) the Commission's approval of the parties' "black box" settlement was illegal. *See Culbertson I*, slip op. at 5-7, 8-18. There, as here, we rejected Culbertson's arguments in total and affirmed the Commission's approval of the settlement. *Id.* at 18.

[2] There is no dispute that Columbia qualifies as both a "public utility" and "natural gas distribution company" pursuant to Sections 102 and 2202 of the Public Utility Code (Code), 66 Pa.C.S. §§ 102, 2202.

[3] We note that neither Culbertson's Reproduced Record nor the Commission's Supplemental Reproduced Record complies with Pennsylvania Rule of Appellate Procedure 2173 in that the Reproduced Record is unpaginated and the Supplemental Reproduced Record is paginated using Arabic numerals each followed by a lowercase "a" instead of "b." *See* Pa.R.A.P. 2173. We nevertheless refer to both records herein as they have been paginated by the parties.

were designed to generate an additional $82.2 million in revenue. *Id.* at 2; S.R. at 0490a.

Thereafter, the Commission's Bureau of Investigation and Enforcement (I&E) entered an appearance, and the following parties filed formal complaints challenging the proposed rate increase: the Office of Small Business Advocate (OSBA),[4] the Office of Consumer Advocate (OCA),[5] the Pennsylvania State University (PSU), Columbia Industrial Intervenors (CII), Jose A. Serrano (Serrano), Constance Wile (Wile), and Culbertson. Several parties sought and were granted intervention, including the Pennsylvania Weatherization Providers Task Force (Task Force), the Retail Energy Supply Association, Shipley Choice, LLC and NRG Energy, Inc. (collectively, RESA/NGS Parties), the Coalition for Affordable Utility Services and Energy Efficiency in Pennsylvania (CAUSE-PA), and the Natural Resources Defense Council (NRDC). *Id.* at 2-3; S.R. at 0490a-91a.

On April 14, 2022, the Commission entered an order (1) instituting an investigation of the lawfulness, justness, and reasonableness of both the proposed new rate and Columbia's existing rates, rules, and regulations; (2) suspending the rate

---

[4] Sections 3, 5, and 7 of the Small Business Advocate Act, Act of December 21, 1988, P.L. 1871, 73 P.S. §§ 399.41-399.50b (SBAA), authorize the OSBA, which is an office within the Department of Community and Economic Development, to intervene and represent the interests of small business owners in proceedings before the Commission. 73 P.S. §§ 399.43, 399.45, 399.47.

[5] The OCA is authorized to intervene in Commission proceedings to represent the interests of consumers. *See* Sections 902-A, 904-A, and 905-A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, added by the Act of July 9, 1976, P.L. 903, 71 P.S. §§ 309-2, 309-4, 309-5.

3

increase pursuant to Section 1308(d) of Code, 66 Pa.C.S. § 1308(d);[6] and (3) assigning the matter to the Office of Administrative Law Judge[7] for hearings and a recommended decision. *Id.* at 2; S.R. at 0490a. On June 14, 2022, Culbertson filed a motion for special investigation into Columbia's proposed rates and the quality of the work of its contractors. *Id.* at 7; S.R. at 0297a. The ALJs denied the motion on June 24, 2022. *Id.* The parties thereafter conducted extensive pre-hearing discovery. *Id.* at 0297a-99a. The ALJs conducted telephonic input hearings on May 31, 2022 and June 1, 2022, and thereafter conducted an evidentiary hearing on August 3, 2022. (Commission Op., at 3; S.R. at 0491a.) Other than a single Columbia witness, all other witnesses were excused from appearing live at the evidentiary hearing because no parties requested cross-examination. All proffered testimony and exhibits were admitted into evidence without objection. *Id.* at 3-4; S.R. at 0491a-92a. Culbertson did not present any evidence. OSBA, Culbertson, I&E, Columbia, and PSU thereafter submitted principal and reply briefs.

On September 2, 2022, Columbia, I&E, the OCA, the OSBA, PSU, CII, the RESA/NGS Parties, CAUSE-PA, and the Task Force (collectively, Joint Petitioners) filed a Joint Petition for Partial Settlement (Partial Settlement), which sought approval of a settlement among the Joint Petitioners that would resolve all outstanding issues except revenue allocation and rate design. The same day, Columbia, I&E, the OCA, PSU, CII, CAUSE-PA, and the Task Force (collectively, Non-Unanimous Petitioners) filed a Joint Petition for Non-Unanimous Settlement

---

[6] A proposed general rate increase is automatically suspended, for a period not to exceed seven months after the date on which it otherwise would become effective, pending final decision by the Commission regarding the rate's lawfulness. 66 Pa.C.S. § 1308(d).

[7] The matter first was assigned to Deputy Chief ALJ Christopher P. Pell. On May 2, 2022, ALJ John Coogan was assigned to co-preside. (S.R. at 0293a-94a.)

4

Regarding Revenue Allocation and Rate Design (Non-Unanimous Settlement), which proposed a settlement regarding revenue allocation and rate design. Together, the Partial Settlement and Non-Unanimous Settlement (Settlements) would provide for increased annual base rate revenues to Columbia of $44.5 million, and the total average monthly bill of a residential customer using 70 therms[8] of gas per month would increase from $123.24 to $128.96. (Commission Op., at 6; S.R. at 0494a.) The OSBA filed objections to the Non-Unanimous Settlement, and Culbertson filed objections to the Settlements.

The ALJs issued the Recommended Decision on October 4, 2022, in which they concluded that the Settlements were consistent with the Code, supported by substantial evidence, and in furtherance of the public interest. (S.R. at 0408a.) The ALJs also thoroughly addressed and rejected in total Culbertson's objections. Culbertson had argued in opposition to the Settlements that (1) Columbia's accelerated pipeline replacements were unreasonable and wasteful; (2) the Commission's process for investigation into the reasonableness of Columbia's proposed rate increase is flawed for multiple reasons, including that it does not follow certain financial and auditing guidelines; (3) Columbia did not explain why its base rates are higher than those of other natural gas producers; (4) the Commission's approval of "black-box" settlements is improper; and (5) he was denied due process during the proceedings before the ALJs. (S.R. at 0351a-56a; 0396a-97a.)

The ALJs first concluded that the Settlements were supported by ample evidence in the record and that Culbertson presented no evidence or analysis supporting his contentions that the rates are unreasonable. The ALJs further rejected Culbertson's arguments that the Commission's investigation into the proposed rates was inadequate,

---

[8] "Therm" is a term used in the natural gas industry to describe the energy output of a single unit of gas. *Culbertson I*, slip op. at 4 n.8.

5

citing the testimony of multiple expert witnesses, four public input hearings, and the extensive evidentiary record developed before the ALJs to support the finding that the investigation was adequate. *Id.* at 0404a-05a.[9] Next, the ALJs rejected Culbertson's arguments regarding the comparable base rates of other natural gas producers because Culbertson presented no evidence whatsoever to support his arguments, and any reference by Culbertson to evidence not in the record would not be considered. *Id.* at 0405a. Lastly, the ALJs concluded that Columbia met its burden to establish that its proposed rate increase was supported by substantial evidence with regard to both its accelerated pipeline replacement program and the safety concerns raised by Culbertson, who, again, did not present any evidence to support his claims. *Id.* at 0406a. The ALJs accordingly recommended that Culbertson's complaint be dismissed in its entirety. *Id.*

On October 14, 2022, Culbertson filed 16 exceptions[10] to the Recommended Decision, which, fairly summarized, contended that (1) the Settlements were not in compliance with the Code and were not in furtherance of the public interest because the Commission's investigation of the proposed rate increase did not comply with certain provisions of the Code of Federal Regulations, the Government Accountability Office (GAO) Yellow Book, and GAO Green Book (*id.* at 0418a-430a); (2) his complaint should not be dismissed (*id.* at 0432a-35a); (3) I&E did not adequately perform its prosecutorial function (*id.* at 0435a-36a); (4) he was wrongfully excluded from settlement negotiations and that the ALJs should have imposed rules

---

[9] The ALJs also noted that Culbertson's arguments were similar to those made in *Culbertson I*, which, in pertinent part, were rejected by the ALJ, the Commission, and this Court. *Id.* at 0405a.

[10] Although Culbertson's exceptions are numbered as Exceptions 1 through 14, they include two exceptions designated as "Exception 11" and two designated as "Exception 12." (S.R. at 0441a-44a.)

6

requiring his participation in settlement discussions (*id.* at 0436a); (5) the revenue allocations initially proposed by Columbia ($82.2 million) and agreed upon in the Settlements ($44.5 million) are incorrect (*id.* at 0436a-37a); (6) the costs associated with Columbia's accelerated pipeline replacement program are not just and reasonable (*id.* at 0437a-38a); (7) he was prevented from introducing any evidence to support his claims because of the Commission's inadequate investigation (*id.* at 0438a-39a); (8) the ALJs did not acknowledge or consider opposition letters submitted by the public (*id.* at 0439a); (9) "black-box" settlements are illegal in Pennsylvania and should not be permitted in Commission proceedings (*id.* at 0440a-442a); (10) I&E did not utilize the GAO Yellow Book and other generally accepted auditing standards to evaluate Columbia's necessary revenue (*id.* at 0441a); (11) certain accounting methods utilized in reaching the Settlements were inappropriate (*id.* at 0442a-43a); (12) the effectiveness of the OCA, OSBA, and I&E is negatively affected by the Commission and the ALJs (*id.* at 0443a-44a); (13) the extensive discovery conducted by the parties was inadequate because it did not comply with the GAO Yellow Book (*id.* at 0444a); (14) an adequate financial audit of Columbia has not been performed (*id.* at 0444a); and (15) safety issues persist within Columbia's operations, and the witnesses presented by Columbia and I&E were incorrect on this issue (*id.* at 0445a-47a.). The OSBA also filed exceptions.

On December 8, 2022, the Commission entered an order denying Culbertson's and the OSBA's exceptions, adopting the ALJs' Recommended Decision, and approving the Settlements without modification.[11] Culbertson filed his Petition for Review (PFR) in this Court on January 5, 2023.

---

[11] The Commission also granted Columbia's Motion to Strike Culbertson's "Motion to the Commission to Expedite Determinations Regarding the Pipeline Safety Including the Regulatory **(Footnote continued on next page…)**

## II.   QUESTIONS PRESENTED

Culbertson presents multiple issues in both his PFR and brief, which we can fairly combine and group into the following three overarching questions: (1) whether the Commission conducted a legally adequate investigation into Columbia's proposed rate increase; (2) whether the Commission's settlement process deprived Culbertson of due process; and (3) whether the rates contained in the Commission-approved "black box" settlements are just, reasonable, and in furtherance of the public interest.[12]

## III.   DISCUSSION

Our review of an order of the Commission is limited to determining whether the Commission violated constitutional rights, erred as a matter of law or procedure, or made findings unsupported by substantial evidence in the record.  2 Pa.C.S. § 704; *Popowsky v. Pennsylvania Public Utility Commission*, 910 A.2d 38, 48 (Pa. 2006) (*Popowsky II*).  In conducting such review, we defer to the Commission's interpretation of both the Code and its own regulations unless such interpretation is clearly erroneous.  *Popowsky v. Pennsylvania Public Utility Commission*, 706 A.2d 1197, 1203 (Pa. 1997) (*Popowsky I*).  We will "neither substitute [our] judgment for that of the [Commission] when substantial evidence supports the [Commission]'s decision on a matter within the [Commission]'s expertise, nor should [we] indulge in the process of weighing evidence and resolving conflicting testimony."  *Lehigh Valley*

---

Required Installation, Maintenance, and Use of Utility-Owned Curb Valves as Connected to Service Lines." (S.R. at 0493a.)  Neither of those motions is at issue in this appeal.

[12] These three overarching questions also fairly encompass those presented by the Commission and Columbia in their briefs.  *See* Commission Br., at 3; Columbia Br., at 5.

8

*Transportation Services, Inc. v. Pennsylvania Public Utility Commission*, 56 A.3d 49, 56 (Pa. Cmwlth. 2012) (internal quotations, original bracketing, and citation omitted).

The Code requires that rates made or received by a public utility be just and reasonable and "in conformity with regulations or orders of the [C]ommission." 66 Pa.C.S. § 1301(a). If a public utility seeks to increase its rates, it first must provide the Commission with 60 days' notice of the proposed increase. *See* 66 Pa.C.S. § 1308(a). Then, upon the filing of a third-party complaint or its own motion, the Commission may conduct a hearing to determine the lawfulness of the proposed new rate. 66 Pa.C.S. § 1308(b). Where a public utility requests a general rate increase, the Commission also must "promptly enter into an investigation and analysis" of the proposed rate. 66 Pa.C.S. § 1308(d).

If the Commission determines the proposed rates are "unjust or unreasonable, or in anywise in violation of the law," the Commission must "determine the just and reasonable rate to be charged or applied by the public utility for the service in question, and shall fix the same by order to be served upon the public utility." 66 Pa.C.S. § 1308(c). In general rate cases, following an investigation and hearing, the Commission must enter "a final decision and order, setting forth its reasons therefor, granting or denying, in whole or in part, the general rate increase requested." *Id.*

At a hearing before the Commission, the proponent of an order carries the burden of proof. 66 Pa.C.S. § 332(a). That party "must prove its case by a preponderance of the evidence, which is evidence more convincing than that offered by the other parties." *Transource Pennsylvania, LLC v. Pennsylvania Public Utility Commission*, 278 A.3d 942, 955 (Pa. Cmwlth. 2022) (citing *Se-Ling Hosiery, Inc. v. Margulies*, 70 A.2d 854, 855-56 (Pa. 1950)). The proponent's burden of proof includes a burden of production and a burden of persuasion. *Transource Pennsylvania*, 278 A.3d

9

at 955 (citation omitted). "[T]he burden of persuasion never leaves the party on whom it is originally cast, but the burden of production may shift during the course of the proceedings." *Riedel v. County of Allegheny*, 633 A.2d 1325, 1328 n.11 (Pa. Cmwlth. 1993). "In determining the reasonableness of any discretionary agency action, 'appellate courts accord deference to agencies and reverse agency determinations only if they were made in bad faith or if they constituted a manifest or flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions.'" *Bucks County Services, Inc. v. Philadelphia Parking Authority*, 195 A.3d 218, 237 (Pa. 2018) (quoting *Rohrbaugh v. Pennsylvania Public Utility Commission*, 727 A.2d 1080, 1095 (Pa. 1999)).

## A.     The Commission's Investigation

Culbertson first argues, in quite jumbled fashion, that the Commission's investigation of Columbia's proposed rate increase was inadequate because the Commission did not conduct an internal audit of Columbia in accordance with various federal laws, regulations, generally accepted government auditing standards (GAGAS), the GAO Yellow Book and Green Book, and article VIII, section 10 of the Pennsylvania Constitution.[13]  (Culbertson Br., at 30-38, 44-45.)  We addressed these very arguments in *Culbertson I*, where we concluded that Culbertson provided no authority that any of these standards or authorities applied in Commission rate proceedings. *Culbertson I*, slip op. at 10-11.  We also concluded that Columbia is not an entity funded or aided financially by the Commonwealth and therefore is not subject to audits under article VIII, section 10. *Id.*  Culbertson likewise here has not included

---

[13] Article VIII, section 10 of the Pennsylvania Constitution generally provides that entities funded or aided financially by the Commonwealth shall be subject to audits performed in accordance with generally accepted accounting principles.  Pa. Const. art. VIII, § 10.

any Pennsylvania authority indicating that the Commission was obligated to conduct such an audit, and we again reject his arguments accordingly.

Culbertson next argues that the Commission erred in failing to appoint an "independent and competent investigator" to conduct investigation of Columbia's proposed rate increase and generally challenges the impartiality of the Commission's investigation. (Culbertson Br., at 39-44.) Once again, Culbertson's arguments on this point are wandering and nearly unintelligible. Although Culbertson offers extensive personal opinion regarding how the Commission *ought to* conduct its base rate increase investigations, he has not identified any governing provisions of the Code or the Commission's regulations that were violated or any portions of the record indicating bias or partiality. The Commission concluded in this regard:

> We agree with the ALJs that this filing has been subject to an extensive and detailed investigation, which includes I&E's active participation in this proceeding. We agree with Columbia that I&E thoroughly examined Columbia's filing, as evidence by the testimony from I&E's witnesses regarding operating and maintenance expenses, energy efficiency, rate of return, cost of service, revenue allocation, and pipeline replacement. . . . [N]either the Code nor the Commission's [r]egulations require I&E, or any other [p]arty, to conduct an audit as part of [a] rate case . . . .

> Additionally, . . . [i]n the context of a general rate increase case such as this one, the Commission is aided by the active participation of entities representing various subgroups of the entire public. A number of these active participants have a statutorily imposed obligation to provide this representation, while others are self-created entities choosing to represent a delineated subgroup. Taken as a whole, these active participants cover the entire spectrum of the public whose welfare is to be protected.

> The OCA is statutorily charged with the duty of representing the interests of consumers . . . . The OSBA is statutorily charged with the duty of representing the interests of small

11

business consumers . . . . I&E is statutorily charged with taking appropriate enforcement actions, including rate proceedings [to ensure compliance].

One could argue that these three entities alone constitute representation of the entire public, whose welfare is to be protected.

We also find no merit in [ ] Culbertson's arguments that suggest [the OCA, OSBA, and I&E (Statutory Parties)] were not properly fulfilling their duties or that the ALJs were not conducting the proceeding in an impartial manner. There is nothing in the record to support [ ] Culbertson's assertions. As Columbia states, the Statutory Parties presented extensive testimony and exhibits from various witnesses. Additionally, [ ] Culbertson does not refer to any evidence of an actual or apparent impartiality or unprofessional conduct of the proceeding by the ALJs that would be contrary to the requirements in the Code or in [its] [r]egulations.

(S.R. at 0523a-24a.) We agree with the Commission's conclusions. Other than speculating about the standards that *should* apply in Commission rate cases, Culbertson has not identified any violations of the standards that in fact do apply. His arguments therefore are without merit. *See also Culbertson I*, slip op. at 11-15.

## B.    The Settlement Process

Culbertson next argues that the "black-box" Settlements must be set aside because he was not permitted to participate in the discussions and negotiations that resulted in the Settlements in violation of (1) 52 Pa. Code § 69.401, (2) his right to due process, and (3) his right to access the courts pursuant to article I, section 11 of the Pennsylvania Constitution, Pa. Const. art. I, § 11. (Culbertson Br., at 45-50.)

We have summarized as follows the requirements of due process before an administrative tribunal:

There is no question that due process is required in all hearings before administrative agencies of the Commonwealth. Due process is a concept incapable of exact

12

definition. Rather, it is a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant. However, a fair and impartial tribunal in the first instance is a cornerstone of our notion of due process.

*School District of Philadelphia v. Pennsylvania Milk Marketing Board*, 683 A.2d 972, 978 (Pa. Cmwlth. 1996) (internal citations and quotations omitted). The essential elements of due process in administrative proceedings, as elsewhere, are notice and an opportunity to be heard. *Groch v. Unemployment Compensation Board of Review*, 472 A.2d 286, 287-88 (Pa. Cmwlth. 1984). The Commission resolved Culbertson's due process challenge as follows:

> [W]e find that [] Culbertson's due process rights regarding the Settlements were protected in this proceeding. Although it appears that Columbia and [] Culbertson were unable to resolve his issues informally, [] Culbertson was provided an opportunity to review, comment, and object to the terms of the Settlements, which he did. On September 2, 2022, the ALJs issued a letter to the [p]arties informing them of [the] two proposed [S]ettlements in the case and how to submit comments or objections regarding those [S]ettlements to the ALJs for consideration. . . . Culbertson filed an [o]bjection to the Settlements. [] Culbertson offers no evidence to support his claim that he was inappropriately excluded from settlement discussions.

(S.R. at 0614a.)

Culbertson does not argue that he was in any way precluded from filing a complaint, obtaining party status, filing briefs, engaging in extensive discovery, presenting evidence, and otherwise participating in the evidentiary hearing before the ALJs, lodging objections and exceptions to the Settlements, or in any other way engaging fully in the Commission proceedings. The record from the Commission amply establishes that he did all of these things. Instead, Culbertson argues that he was entitled to participate in settlement negotiations. We disagree.

13

First, Culbertson did not present any evidence before the ALJs or the Commission, in the form of his own testimony or otherwise, establishing that he was, in fact, excluded from settlement negotiations. Indeed, Culbertson did not present any evidence whatsoever in the proceedings below. The record establishes only that he did not join in the Settlements and preserved his right to further litigate his issues before the Commission, which he did extensively. Thus, even to the extent that Culbertson had any right to participate in settlement negotiations, he has not established that such right was denied.

Second, and more fundamentally, nothing in the Code or the Commission's regulations requires parties to participate in settlement negotiations, and the Commission is not required or authorized to manage, regulate, or otherwise oversee the settlement process. *But see* 52 Pa. Code § 5.231 (the Commission's presiding officer may, when requested by the parties, participate in settlement conferences). Rather, the Commission has established a non-binding *policy* that favors settlements in whole or in part, *see* 52 Pa. Code § 69.401, and the Commission must review proposed settlements to ensure that their terms are reasonable and in the public interest. *See* 52 Pa. Code § 69.406; S.R. at 0501a. In short, Culbertson has not pointed to any authority that would *entitle* him to participate in settlement negotiations between some, most, or all of the parties involved in a Commission rate case. Rather, he is entitled to participate in full in the Commission proceedings, *i.e.*, present evidence, conduct discovery, review and object to settlements, file exceptions to ALJ recommended decisions, file briefs, and appeal to this Court. He has done those things in this case and more. We simply cannot conclude that he has been deprived of due process, *vis à vis* the settlement negotiations or otherwise.

### C.     Just and Reasonable Rates in the Public Interest

14

Culbertson lastly contends that the rates established by the "black box" Settlements are not just, reasonable, or in the public interest, in large part because they are disproportionate to the base rates charged by other natural gas companies (Culbertson Br., at 51-53.)[14]  Again, we disagree.

In reviewing the "black box" Settlements, the Commission concluded that the rates established therein were in the public interest, just, and reasonable.  As to the Partial Settlement, the Commission concluded:

> The Partial Settlement is a "black box" settlement, which means that the parties did not agree to each and every element of the revenue requirement calculations.  Moreover, settled rate cases are encouraged in Pennsylvania and "black box" settlements are legal.  As such, the Commission has approved "black box" settlements in the past and has affirmed them as important tools in achieving consensus over the resolution of just and reasonable rates in rate cases.  Accordingly, the Commission has recognized that "black box" settlements can serve an important purpose in reaching consensus in rate cases[.] . . .

> Based upon our review of the record, we conclude that the "black box" settlement in this proceeding is in the public interest and results in just and reasonable rates.  As we have concluded in other cases, although the [Partial S]ettlement is described as a "black box," meaning that the parties did not stipulate precisely to how each arrived at its conclusion, it does not diminish the effectiveness of the examination conducted by numerous parties having various, and in some cases antithetical, goals.

---

[14] We note that Culbertson's brief is littered with a substantial amount of factual material that was not introduced in the proceedings before the Commission, including news articles, rates of other natural gas companies, financial figures, and more.  With certain exceptions not applicable here, we may consider only those facts included in the certified record on appeal, and extra-record documents and factual information may not become part of the record on appeal merely by being appended to a brief. *Thomas v. Grimm*, 155 A.3d 128, 134 (Pa. Cmwlth. 2017).  We have not considered herein any of the extra-record material Culbertson has included in his brief.

15

. . . .

> [] Culbertson has not presented any evidence or raised any arguments in support of his objection to the "black box" [Partial S]ettlement. His opinions, without more, are insufficient to overturn the findings and recommendation of the ALJs. Therefore, we find that the "black box" [Partial S]ettlement in this proceeding, including the agreed-upon revenue, is in the public interest and results in just and reasonable rates.

(S.R. at 0520a) (citations omitted). With regard to the Non-Unanimous Settlement, the Commission concluded:

> Viewed in its entirety, the Non-Unanimous Settlement fairly and equitably resolves the issues impacting residential consumers, business customers, and the public interest at large and represents a fair balance of the interests of Columbia and its customers. Additionally, we find that the Non-Unanimous Settlement will result in significant savings of time and expenses for all [p]arties involved by reducing or avoiding the necessity of further administrative proceedings, as well as reducing or avoiding the need for possible appellate court proceedings, thereby conserving administrative resources. Further, the Non-Unanimous Settlement provides regulatory certainty with respect to the disposition of issues which benefits all the [p]arties. . . . [T]he Non-Unanimous Settlement is supported by substantial evidence and is in the public interest.

*Id.* at 0596a.

After a thorough review of the record, the ALJs' Recommended Decision, the Commission's Opinion and Order, and the parties' briefs, we cannot conclude that the Commission erred or rendered any findings unsupported by substantial evidence in the record. Culbertson has not cited any *pertinent* legal authority or *record* evidence indicating to the contrary. As such, his arguments on appeal are without merit.

## IV. CONCLUSION

16

In sum, because Culbertson has failed to establish that the Commission violated his constitutional rights, erred as a matter of law or procedure, or made findings not supported by substantial evidence in the record, we affirm the Commission's December 8, 2022 order.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard C. Culbertson,       :
          Petitioner       :
                              :
      v.                 :   No. 90 C.D. 2023
                              :
Pennsylvania Public Utility    :
Commission,               :
          Respondent    :

## *__ORDER__*

AND NOW, this 30th day of September, 2024, the December 8, 2022 order of the Pennsylvania Public Utility Commission is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge